411 A.2d 740

COMMONWEALTH of Pennsylvania, Appellant,

v.

Hadley NELSON.

Supreme Court of Pennsylvania.

Feb. 1, 1980.

Reargument Denied March 17, 1980.

Steven H. Goldblatt, Deputy Dist. Atty., Eric Henson, Philadelphia, for appellant.

John W. Packel, Chief, Appeals Div., Defender Ass'n of Philadelphia, Leonard Sosnov, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Superior Court is affirmed.

ROBERTS, J., filed an Opinion in Support of Affirmance in which O'BRIEN and NIX, JJ., join.

LARSEN, J., filed an Opinion in Support of Reversal in which EAGEN, C. J., and FLAHERTY, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

I agree with the conclusion of the suppression court, affirmed by the Superior Court, that the arrest of appellee Hadley Nelson is not supported by probable cause. These courts correctly held that the victim's identification of appellee following arrest, appellee's confession and physical evidence must be excluded as fruits of the illegal arrest. The confession must also be suppressed because appellee, a seventeen year old, was entitled to consult with an interested adult before waiving his *Miranda* rights. Accordingly, I would affirm.

I

■ The Opinion in Support of Reversal contends that appellee was not arrested when police summoned him to the patrol car. That Opinion's contention is based on a theory that appellee was not physically restrained, or otherwise "threatened or intimidated." This theory, however, has no support in our case law. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A.2d 304, 311 (1963), this Court stated:

"An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and [that] subjects him to the actual control and will of the person making the arrest . . . .' "

See also *Steding v. Commonwealth*, 480 Pa. 485, 391 A.2d 989 (1978); *Commonwealth v. Brown*, 230 Pa.Super. 214, 326 A.2d 906 (1974). Here the record is clear that appellee was under arrest from the moment he was so summoned by the arresting officer. When asked, "[A]t the point when you called him over to the car he wasn't free to go at that point, was he?," arresting Officer Passio, without qualification, responded "No." Record at 36a, N.T.S.H. 64.

■■■ The only information available to the arresting officer at the time he arrested appellee was that a black male had committed a rape in the neighborhood in which appellee was walking, some twenty minutes after the crime was reported. This evidence is clearly insufficient to support a finding of probable cause to arrest. *Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978); *Commonwealth v. Levesque*, 469 Pa. 118, 364 A.2d 932 (1976); *Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487 (1975). Mere suspicion is insufficient, and the burden is on the Commonwealth to demonstrate with reasonable specificity that sufficient evidence of probable cause existed. *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968).

This case is virtually identical to *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976), where this Court found insufficient evidence of probable cause to arrest. There,

"the arresting officer testified that he had no description of the alleged perpetrators of the homicide, other than 'Negro males' and no description of wearing apparel. All he knew was that they were running south on Eleventh and Girard Streets."

465 Pa. at 326, 350 A.2d at 789. Here, too, there is no basis for the officers to link appellee to the crime.

■■■ Since it is clear that the arrest was unlawful because not supported by probable cause, the "fruits" of the arrest must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); see also *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45

L.Ed.2d 416 (1975); *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975). Whether evidence obtained pursuant to an illegal arrest was acquired "by the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint," *Wong Sun,* supra, 371 U.S. at 487–88, 83 S.Ct. at 417, is to be determined from a totality of the circumstances. See *Brown v. Illinois,* supra. Here, the suppression court and the Superior Court correctly held that the victim identification, the confession and the physical evidence were derivative of the illegal arrest.

## II

■ An additional ground for excluding the confession is that appellee, a juvenile, was not provided an opportunity to consult with an interested adult. The position of the Opinion in Support of Reversal, that the presence of an interested adult was not required for a knowing and intelligent waiver of appellee's constitutional rights, is in direct conflict with the case law of Pennsylvania. This Court in *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669, cert. denied, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975), reiterated the per se rule for waiver of constitutional rights by a juvenile. See also *Commonwealth v. Thomas,* 486 Pa. 568, 406 A.2d 1037 (1979); *Commonwealth v. Smith,* 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974).

The Opinion in Support of Reversal appears to conclude that application of this Court's established per se rule of *McCutchen* would serve no purpose here. I disagree. Per se rules are needed to protect important interests of an accused. This Court has committed the test of a juvenile's waiver of personal constitutional rights to a per se rule and should, like the suppression court and the Superior Court, abide by it. See also *Commonwealth v. Hackett,* 484 Pa. 43, 398 A.2d 651 (1979); *Commonwealth v. Barnes,* 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Smith,* supra.

Accordingly, the suppression court and the Superior Court correctly held that the confession, victim identification and the physical evidence must be suppressed.

O'BRIEN and NIX, JJ., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

This is an appeal by the Commonwealth from a *per curiam* order of the Superior Court affirming the grant of appellee Hadley Nelson's application to suppress evidence. The factual findings of the suppression court which are supported by the evidence and the uncontradicted testimony presented by the Commonwealth[1] disclose the following series of events:

At approximately 3 a. m. on September 19, 1975, Alethea Kociuba was stabbed and raped in her North Philadelphia residence. Within moments of the crime, its occurrence and location and the fact that the perpetrator was a negro male were broadcast over the police radio. These messages were received by Patrolman Joseph Passio who was approximately seven blocks from the crime scene and who then began to cruise the area surrounding the victim's residence in his patrol car. After finding the streets deserted (as is normally the case in that particular neighborhood during the early morning hours), Patrolman Passio parked his vehicle and entered the victim's residence. He surveyed the crime scene briefly, noting that the kitchen window was open, and returned to his automobile to resume patrolling the neighborhood.

At approximately 3:20 a. m., or twenty minutes after the incident, Patrolman Passio observed the appellee, a negro male, walking on Broad Street two to three blocks from the victim's residence. The appellee was walking very rapidly

1. See *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976); *Commonwealth v. Johnson*, 467 Pa. 146, 152, 354 A.2d 886, 889 (1976).

away from the vicinity of the victim's house and looking back over his left shoulder as he walked. Although the officer had just patrolled Broad Street, he had not seen the appellee or any other pedestrians, and he pulled his vehicle to the side of the road and summoned the appellee.

Patrolman Passio questioned the appellee as to his identity, where he had been, how he had gotten to that point on Broad Street, and his destination. Appellee responded to these questions in a nervous and agitated fashion, stating that he was seventeen; that he had no identification; that he had been on a bus which dropped him off approximately one and one-half miles further up Broad Street; that he had been walking down Broad Street since that time; and that he was going further down Broad Street with the intention of taking another bus to his home which was several more miles away. Another officer drove up and also began to participate in the discussion. In response to the second officer's questions, appellee stated that he had no money, no bus transfer, and that he was currently on probation for the crime of rape. Whereupon, the officers frisked or patted down the appellee and found that his clothing was in a state of disarray, his pants were very wrinkled, and his shirt tail was almost entirely out of his pants. Patrolman Passio then arrested the appellee,[2] placed him in the back of his patrol car, and transported him to the victim's residence.

2. Appellee asserts that he was arrested at the time Patrolman Passio summoned him to the patrol car. The suppression court, however, held that this was an investigatory stop and not an arrest. The testimony of the Commonwealth witnesses discloses that appellee was not handcuffed or otherwise physically restrained prior to being placed in the patrol car; that the conversation with him was brief and consisted of general questions not directly concerning the crime under investigation; that throughout a large part of the conversation, Patrolman Passio did not even get out of his patrol car; and that appellee was in no way threatened or intimated by the officers. The evidence thus supports the finding that no act indicating an intention to take appellee into custody and subjecting him to the will and control of the officers, see *Commonwealth v. Richards*, 458 Pa. 455, 459, 327 A.2d 63, 65 (1974), occurred prior to the time appellee was placed in the patrol car. Consequently, the suppression court's conclusion that an arrest did not take place when appellee was

Upon their arrival, the victim stated that she could not identify her assailant by sight because a pillow had been placed over her face before she was assaulted and raped. She stated that she could, however, identify her assailant's voice and that he had said to her, "I was sent by someone to do this and to kill you." The appellee was asked to repeat these words and, immediately after he had done so, was identified by the victim.

Appellee was then taken to the detective division, arriving there at approximately 4 a. m. A juvenile aid officer called the police station nearest to appellee's home and instructed them to contact appellee's parents. Without receiving a response to this message, the officer informed appellee of his constitutional rights and, after appellee indicated his willingness to speak to the officer without an attorney, commenced questioning him about the crime. Appellee gave the officer an exculpatory statement, and the interview was discontinued at 4:30 a. m.

Between 4:30 and 7:30 a. m., the police investigated appellee's statements and found evidence indicating that appellee had been untruthful. At 7:30 a. m., the interview was resumed. Appellee, who had still not heard from his parents, again waived his constitutional rights and was confronted with the results of the investigation. He stated that he had committed the crime and recounted how he had gained entry into the victim's home and made his way to the second floor. However, before he had explained the details of the rape and assault, appellee refused to make any further statements, and the interview was terminated at 7:40 a. m. Approximately seven hours later, a search warrant authorizing the seizure of a sample of appellee's pubic hair, his pants, and his underpants was issued and executed.

As appellee was not quite eighteen years of age, he was processed in the family court division. A hearing was held after which it was ordered that appellee be prosecuted as an adult, and informations charging appellee with rape, burgla-

summoned to the officer's vehicle should not be disturbed on appeal. *Commonwealth v. Johnson, supra* n.1.

ry, robbery, aggravated and simple assault, theft, and weapons offenses were returned. Appellee then filed several pre-trial motions, including an application to suppress the out-of-court identification, statements, and physical evidence obtained after his arrest. The suppression court granted the application holding that appellee had been arrested without probable cause and that the evidence obtained after the arrest was tainted by its illegality. The Commonwealth appealed the suppression order to the Superior Court which affirmed without opinion, and this Court granted the Commonwealth's petition for allowance of appeal.

The Commonwealth contends that there was probable cause for appellee's arrest and, as a consequence, that the suppression court erred in suppressing the evidence obtained after the arrest.[3] I agree.

Probable cause to arrest exists if the facts and circumstances within the knowledge of the officer at the time of the arrest are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Jones*, 478 Pa. 172, 177, 386 A.2d 495, 497 (1978). This test is not one of certainties, nor is it equivalent to a *prima facie* showing of criminality; rather, it is a test of probabilities which are to be evaluated in the context of the common sense practical considerations of everyday life. *Commonwealth v. Dickerson*, 468 Pa. 599, 364 A.2d 677 (1976); *Commonwealth v. Hall*, 456 Pa. 243, 317 A.2d 891 (1974). Furthermore, "[b]ecause the whole is necessarily more than any of its parts in law as well as mathematics the standard of probable

---

**3.** The Commonwealth also contends that: 1) the detention of appellee for purposes of identification was proper even without probable cause for arrest, and 2) assuming the detention was improper, the out-of-court identification should not have been suppressed under *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), wherein this Court held that when an illegal arrest merely provides the means for a more prompt confrontation and the illegality does not contribute to the witnesses' knowledge or the accuracy of the identification, an out-of-court identification which follows the illegal arrest will not be suppressed as the fruit of that arrest. As I believe there was probable cause for the arrest, it is unnecessary to reach these contentions.

cause must be applied to the totality of the circumstances facing the officer and not each individual element apparent before the arrest." *Commonwealth v. Young*, 222 Pa.Super. 355, 358, 294 A.2d 785, 786 (1972). (Citations omitted).

In the instant case, the appellee was found at 3:20 a. m. within three blocks of the crime, and shortly after its commission, walking down a street which is normally deserted at that hour of the morning. Appellee did not reside in the neighborhood, he fit the victim's general description of the perpetrator, and he was acting suspiciously in that he was walking very rapidly away from the vicinity of the victim's residence while looking back over his shoulder. Additionally, appellee behaved nervously while answering questions; his explanations of his presence and prior activities were inconsistent and contrary to the arresting officer's observations;[4] he had previously been convicted of the crime under investigation; and his clothing was disheveled in a manner which was consistent with what may occur in the course of a rape. While many of these facts and circumstances, standing alone, may be innocent in and of themselves, together, they are sufficient "to warrant a man of reasonable caution in the belief" that appellee had perpetrated the rape. *See e. g. Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974) (defendant who fit a general description of robbery suspects known to be fleeing on foot was seen six blocks from the scene of the crime, walking quickly, breathing heavily, perspiring, and looking back over his shoulder); *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 361 A.2d 834 (1976) (defendant did not live in the area and was observed by the police in the vicinity of a reported burglary "ducking" between two parked cars and acting furtively); and *United States v. Young*, 512 F.2d 321 (4th Cir. 1975) (defendant, a black male who was stopped at a

4. Appellee said that he had taken a bus part of the way to where he was observed by the officers, walked some distance down Broad Street after leaving that bus, and intended to take another bus home. On the other hand, appellee also said that he had no money and no bus transfer, and the arresting officer had patrolled Broad Street only moments before encountering appellee and, although he was looking, had not observed any pedestrians.

road block a short distance from the scene of a robbery committed by black males, had been picked up by the driver of the car near the robbery and gave the police an unlikely explanation of his presence there).  In fact, under these circumstances, it would have been an astonishing lack of sound judgment for the police to act in any other manner.[5] The suppression court, therefore, erred in concluding that the officers did not have probable cause to arrest appellee and, consequently, said court erred in suppressing the evidence obtained thereafter as the fruit of an unlawful arrest.

Appellee argues that notwithstanding the existence of probable cause, the evidence obtained after his arrest should nevertheless be suppressed.  With respect to the out-of-court identification and the results of the search of appellee and his clothing (the probable cause for which was derived from the identification), appellee asserts that 1) the on-the-scene identification procedure utilized by the police was unduly suggestive, unreliable, and conducive to misidentification; and 2) the Commonwealth's refusal to produce the victim at the suppression hearing resulted in a failure on the part of the Commonwealth to meet its burden of proof and a denial of appellee's rights of confrontation, due process, and compulsory process.  Further, with respect to the inculpatory statements made by appellee after his arrest, appellee asserts that 1) he could not effectively waive his constitutional rights because he was a juvenile and was not given an opportunity to consult with an interested adult; 2) he did not knowingly, intelligently, and voluntarily waive his constitutional rights; 3) his statements were obtained in violation of the Juvenile Act because he was not taken before a

5.  The suppression court evidently realized this, for as it declared its conclusions of law, it stated, "Parenthetically, the Court is compelled to make the editorial comment that the Court is at a complete loss as to what more the police could have done, under the circumstances, to avoid any possible constitutional problems."  Notes of Testimony, April 26, 1976, pp. 390 and 391.  I am at a similar loss and cannot understand how the suppression court could, on the one hand, find the police actions exemplary and, on the other hand, improper as a matter of law.  The Fourth Amendment is predicated upon reasonableness and does not compel such inconsistent results.  *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899 (1968).

court or to a juvenile facility before being transported to the detective division; and 4) his statements were obtained in violation of Pa.R.Crim.P. 130 and were the product of unnecessary delay between arrest and arraignment. I address these contentions seriatim.

When an accused challenges an identification, it is the Commonwealth's burden to show that the procedures employed were not unduly suggestive. Pa.R.Crim.P. 323(h). Because a close proximity in time and place greatly reduces the chance of misidentification, and because mistaken suspects ought not suffer the hardship and embarrassment of protracted police custody, this Court held in *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974), that, absent "special elements of unfairness", prompt on-the-scene confrontations will not be found to fall within the ambit of suggestiveness. Thus, the burden on the Commonwealth in the instant case was to prove that there were no special elements of unfairness present in the identification procedures.

At the suppression hearing, the Commonwealth introduced the testimony of three police officers who were present at the identification and who testified to the procedures employed. The victim was not called to testify because, as her psychiatrist testified and the suppression court found, subjecting her to the rigors of the suppression hearing could cause a psychological breakdown which would render her unable to testify for what may be a period of months. The Commonwealth indicated that the victim would appear at appellee's trial which was to begin shortly after the suppression hearing. The appellee also did not testify at the suppression hearing, although he could have under Pa.R.Crim.P. 323(h) without waiving his right to remain silent during trial, nor did he offer any other testimony which contradicted the occurrences recounted by the three Commonwealth witnesses.

On the basis of the police officers' testimony, the suppression court held that the out-of-court identification was a "proper . . . prompt, on-the-scene identification." I

agree; that testimony discloses that appellee was identified at the victim's residence approximately one-half hour after the crime; that it was the victim's unsolicited suggestion that she could identify her assailant's voice which prompted the police to employ voice identification; that appellee was not handcuffed when he entered the victim's house and was merely directed to walk in with the officers; that appellee was not treated or displayed in a manner that would suggest that he must have been the perpetrator; and that the victim emphatically and spontaneously identified the appellee as soon as he repeated the words of her assailant.[6] In short, the scenario is complete with respect to the events surrounding the identification and does not contain a hint of a special element of unfairness. It thus amply satisfies the Commonwealth's burden of proof[7] and supports the suppression court's conclusion, which should not, therefore, be disturbed on appeal. *Commonwealth v. Johnson, supra* n.1.

Appellee's other contention, that the suppression court's refusal to compel the Commonwealth to produce the victim at the suppression hearing because of the danger it posed to her health resulted in a denial of his rights to due process, confrontation, and compulsory process, is premature. Rule 323(j) of the Pennsylvania Rules of Criminal Procedure provides that a suppression court's ruling with respect to the admissibility of evidence is not binding at trial "upon a showing of evidence which was theretofore unavailable". The suppression court's ruling obviously made the victim's testimony "unavailable" for purposes of the suppression

---

**6.** The victim was holding her head and looking down at the floor when appellee was asked to repeat the words of the rapist. As soon as he had uttered them, the victim looked up and exclaimed, "You're the one, you mother-f____r."

**7.** Appellee contends that, as a matter of law, the Commonwealth must introduce the testimony of the identifying witness to satisfy its burden and, as authority for this proposition, appellee cites *Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978). While there is language in *Lee* which would suggest that a *per se* rule had been adopted, the present situation illustrates that such hard-and-fast rules are neither necessary nor desirable, and, to the extent *Lee* implies the contrary, I disapprove of it.

hearing and, pursuant to Rule 323(j), appellee may examine the victim at trial and ask that court to reconsider the admissibility of the identification testimony and the results of the search. The suppression court's ruling did not, therefore, result in a deprivation of appellee's constitutional rights; it merely postponed for a brief time his ability to exercise them. Consequently, it was error for that court to suppress the on-the-scene identification and the evidence seized pursuant to the search of appellee and his apparel.

I now turn to the admissibility of appellee's confession. As noted previously, appellee's first contention is that his waivers of constitutional rights were ineffective as he was a juvenile and not provided an opportunity to consult with an interested adult. The Commonwealth recognizes that in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), and its progeny this Court held that an opportunity to consult with an interested adult is a prerequisite to an effective waiver of constitutional rights by a juvenile. The Commonwealth also concedes that the police in the instant case made minimal attempts to secure an interested adult. The Commonwealth, however, asserts that under the circumstances of this case, the presence of an interested adult was not necessary for a knowing, intelligent, and voluntary waiver of constitutional rights, and asks this Court to reexamine the wisdom of applying a *per se* rule to situations such as that presented by the instant case.

The rationale for making the presence of an interested adult a prerequisite to an effective waiver of a juvenile's constitutional rights was set forth in *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977):

". . . The new rule appreciates that the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision. It was therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an

> attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the minor and aware of the consequences that might follow the election to be made."
> *Id.*, 472 Pa. at 498–99, 372 A.2d at 800 (footnotes and citations omitted).

The inexperience of youth, as this passage explains, is thus the cornerstone of the rule.

In the instant case, appellee was less than two months short of eighteen years. He had been interrogated by police on at least two prior occasions, once in August of 1974 and once in August of 1975. On each occasion, appellee was warned of his constitutional rights and waived them, giving an exculpatory statement on the first occasion and an inculpatory statement on the second occasion. Appellee had been involved in juvenile court proceedings in 1974 where he was represented by counsel and had spent time in a juvenile detention facility. At the time of his arrest on the instant charges, appellee had completed nine years of schooling and was repeating his tenth year. Finally, as the Commonwealth witnesses stated and the suppression court found, appellee was informed of his constitutional rights prior to being questioned, and he was competent to and did understand them.

The Commonwealth argues that the appellee was no more in need of the assistance of an interested adult than a person over the age of eighteen who had never had an encounter with the police, and that application of such a rule to the instant case results in the unnecessary automatic exclusion of reliable evidence. I concur. Appellee is not the youthful and inexperienced juvenile contemplated by *McCutchen* and its progeny. His experience with the criminal justice system, his comprehension of his constitutional rights, and the proximity of his age to eighteen years indicate that he was quite capable of making an independent assessment of whether or not to waive those rights. Consequently, no purpose will be served in this case by drawing a "brightline" at the magical moment appellee reaches the age of eighteen

years and suppressing the instant confession merely because there was no interested adult present when appellee waived his rights. I would therefore hold that where, as here, the defendant's age, experience, and intelligence are such that the presence of an interested adult will not significantly contribute to his comprehension and understanding of the situation, he may make an effective waiver of his constitutional rights without first consulting an interested adult.[8]

Furthermore, the totality of the circumstances show that appellee's waivers of his constitutional rights were, in fact, knowing, intelligent, and voluntary. In addition to what has already been recounted, the uncontradicted testimony of the Commonwealth witnesses was that appellee was not physically abused, threatened, or promised anything; that none of his requests were denied; that he was left alone and undisturbed between the interviews; that he behaved normally; and that he was cooperative, willing, and responsive and appeared to be comprehending all that was spoken to him. The only testimony introduced by appellee was that of a psychologist who testified that contrary to the opinion of the Commonwealth's expert, appellee possesses below average intelligence and maturity and has tendencies to distrust others and withdraw when suffering from anxiety. Appellee did not, however, introduce any evidence indicating that he was suffering from anxiety at the time he waived his constitutional rights and, as noted previously, the suppression court found that appellee did in fact understand his rights. Therefore, while this evidence of mental condition is relevant, it is not sufficient to overcome the uncontradicted

8. This, of course, would not indicate a departure from this Court's dedication to advancing those purposes enunciated in *Commonwealth v. Smith, supra,* and it bears repeating that:

While we do not accept the thesis that all confessions of minor offenders elicited without the benefit of counsel or an adult confidant must necessarily be rejected, the younger and more immature the offender the greater is the government's responsibility to provide an opportunity for the counselling of an attorney or the guidance of an informed parent or guardian." *Commonwealth v. Webster,* 466 Pa. 314, 326 n.5, 353 A.2d 372, 378 n.5 (1975).

testimony of the Commonwealth. *Commonwealth v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973).

Appellee's final two contentions, that his confession was the product of violations of the Juvenile Act and Pennsylvania Rule of Criminal Procedure No. 130, are without merit. The Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 6326, provides that a person taking a juvenile into custody shall, "with all reasonable speed and without first taking the child elsewhere," release the child to his parent or guardian, take the child to the court, or deliver him to a detention or shelter care facility, and Pa.R.Crim.P. 130 forbids "unnecessary" delays between arrest and arraignment. Both the Act and the Rule have been construed to permit the police to take a defendant to a police station, attend to administrative matters, question him, and to allow the necessary delays attendant thereto.[9] In the instant case, the events which transpired during the four hours and fifteen minutes that elapsed before appellee's inculpatory statements consisted solely of appellee's identification, transportation from the scene of the crime to the detective division, approximately one-half hour of questioning, three hours of investigation to ascertain the veracity of appellee's statements, and ten more minutes of questioning. Thus, as the suppression court found, the delay was almost entirely attributable to appellee's questioning and reasonable investigation incident thereto and was not improper within the meaning of the Juvenile Act and Pa.R.Crim.P. 130.

The order of the suppression court should, therefore, be reversed.

EAGEN, C. J., and FLAHERTY, J., join in this Opinion in Support of Reversal.

**9.** With respect to the Juvenile Act, see *In Interest of Anderson*, 227 Pa.Super. 439, 313 A.2d 260 (1973), and *In Interest of White*, 264 Pa.Super. ——, 399 A.2d 731 (1979). With respect to Pa.R.Crim.P. 130, see *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974), and *Commonwealth v. Simmons*, 482 Pa. 496, 394 A.2d 431 (1978).