423 A.2d 402

**COMMONWEALTH of Pennsylvania**

v.

**George BLAKEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed Dec. 5, 1980.

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, HOFFMAN and CIRILLO, JJ.*

CIRILLO, Judge:

The appellant, George Blakey, was tried before the Municipal Court of Philadelphia County on charges of carrying a firearm without a license and carrying firearms on public streets. Appellant was found guilty of both charges and was sentenced to one year probation and a fine plus court costs. Mr. Blakey, the appellant, then filed a Petition for a Writ of Certiorari with the Court of Common Pleas. Appellant's request for a Writ of Certiorari was denied, and he appealed to this Court.

The facts of this case are as follows: Officer Anthony Morina was the sole witness for the Commonwealth. He testified that at approximately 7 p. m., December 27, 1978, informants told him that two men, who earlier in the evening had attempted a robbery at 1412 West Columbia Street, were presently in a house at 1745 North Sydenham Street. An informant described the alleged robbers as two Negro males, one short with medium complexion and wearing a blue jacket; the other, a taller male of dark complexion attired in a brown coat.

Shortly thereafter, Officer Morina left Columbia Avenue and quickly traversed the three–fourths of a block distance to 1745 North Sydenham Street. The Officer observed a Negro male standing next to a car parked in front of the house at that address. This male, George Blakey, the appellant, generally fit the description of that individual said to be wearing a blue jacket, one exception being his "small" height which in reality was 5'11". A taller, darker complexioned male who fit the description of the other man as reported by the informant, sat in the front passenger seat.

* Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

594

In response to Officer Morina's question, the appellant admitted owning the car. The male inside, John Clark, was ordered out and the Officer frisked both individuals. Three live thirty–eight rounds of ammunition were found in the appellant's left pocket. Nothing was found on Mr. Clark's person. Officer Morina then searched appellant's car and found a .38 caliber revolver under the front passenger seat where Mr. Clark had been sitting.

The Commonwealth introduced a ballistics report which found the gun to be operable, and a certification by the Pennsylvania State Police that the appellant was not licensed to carry a firearm.

In challenging the "stop and frisk" tactics used by Officer Morina, the appellant claims that the Officer lacked probable cause to search him and that the resulting search of the car and finding of a weapon were fruits of an illegal arrest and should be excluded as illegal evidence.

In two landmark cases, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court set down guidelines regarding material given to police by informants and the use of such information to establish probable cause for an arrest and/or a "stop and frisk." The information provided must contain specific facts which when viewed by a reasonable person would lead them to view the suspect as likely to have committed a crime or about to do so. The Officer must also be able to relate the underlying circumstances which allowed him to view the individual's statements as true. *Aguilar*, supra, at 114, 84 S.Ct. at 1513; and *Spinelli*, supra, at 416, 89 S.Ct. at 589.

Taking the first prong of the *Aguilar–Spinelli* test, one must use the description of the appellant as supplied by the informants and place it in the context of the situation which Officer Morina came upon to see if there was probable cause to stop and frisk at that moment. Also, it is fundamental that neither the evidence disclosed by the search nor

evidence uncovered after the initial frisk can be used to help establish probable cause at the time of the search. *Commonwealth v. Hicks*, 434 Pa. 153, 159, 253 A.2d 276, 280. Hence, the three bullets and the revolver play no part in establishing probable cause.

The information supplied by the informants concerning Mr. Blakey, the appellant, gave no indication of his age, his weight, nor his attire save a blue jacket. He was described as having a "mild complexion" and being "short and situated inside a house at 1745 North Sydenham Street." Therefore, a close look at the description reveals only three things which might specifically distinguish the appellant from any other black male in the area–that he was short, wearing a blue jacket, and located inside a specific house.

Officer Morina approached the 1700 block of North Sydenham Street looking for a man who allegedly had attempted a robbery earlier in the evening several blocks away. He approached the appellant, questioned him, frisked him and searched his car. Yet two of the three specific facts supplied by the informants were missing. The appellant was not short, but instead by Officer Morina's own admission was 5'11". The appellant was not a fugitive hiding in a house but was described by the Officer as calmly talking to others out on the street when he was confronted. Therefore, the only specific element supplied by the informants which the Officer saw to be true as applied to the appellant was that he was wearing a blue jacket. This was the only element in existence to separate him from other black males on the block.

Despite the obvious flaws in the informants' description, the lower court places great emphasis on the fact that the other suspect described by the informants was taller than the appellant so as to make him appear short. However, when the Officer came upon the scene, the appellant was standing several feet away from the driver's side of the car while John Clark was seated in the passenger seat of the car. This made a quick height comparison to account for a 5'11" man as "small" impossible. The lower court also saw as

important the officer's own personal belief that no one else in that block at that time fit the description supplied to him. However, that does not mean that a 5'11" black man, wearing a blue jacket and talking with friends in the street adequately fits a description of a small black male in a specific home and wearing a blue jacket.

There are many Pennsylvania Supreme Court decisions which deny that probable cause existed for a stop and frisk when more facts or certain exigent circumstances were evident than in this case where probable cause was found upon a blue jacket.

In *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976), a police officer received information over his radio regarding a gang fight and a stabbing. While en route to the area, he was given more information "that Negro males were involved in the crime and that they were running south on Eleventh Street." 465 Pa. at 325, 350 A.2d at 789. As the officer approached the scene, he saw the fifteen year old appellant running south only one and one–half blocks from the scene of the killing. The officer stopped the youth and took him to police headquarters where he ultimately confessed to the shooting. Despite the fact that the appellant was black, young, fleeing south and less than two blocks away from the scene of the crime, several minutes after it transpired, the court found a lack of probable cause. They answered in the negative this crucial question, "Was the officer justified in his belief that appellant was the perpetrator?" 465 Pa. at 326, 350 A.2d, at 789.

In the present case, the appellant was not identified as part of any age bracket, was not fleeing from near the site of the crime and nor did the crime happen several minutes prior to the officer's search.

In a recent case, *Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980), the Pennsylvania Supreme Court followed the rationale used in *Sams* to affirm a motion to suppress granted to the appellee by the lower court. A police officer was supplied with information regarding a rape. A black male allegedly committed a rape in a section

of town that the policeman was patrolling. Mr. Nelson was found walking in the area twenty minutes after the crime. The appellee was arrested and later confessed to the crime.

The court agreed that the description supplied to the officer was vague and it went on to say: "Mere suspicion is insufficient, and the burden is on the Commonwealth to demonstrate with reasonable specificity that sufficient evidence of probable cause existed." 488 Pa. at 150, 411 A.2d at 741. The court found no probable cause existed at the time of arrest because there was no concrete basis for the policeman to link the appellee to the crime.

In *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975), the court reversed the appellant's conviction of murder in the first degree and aggravated robbery due to the lack of probable cause at the time of arrest based on a general description supplied to the arresting officer. Two youths apparently shot and robbed a man on 56th Street in Philadelphia. A description was flashed over the police radio "two Negro males in dark clothing, 5'6" to 5'8" in height, with medium builds, medium to dark complexions and semi–bush haircuts." 459 Pa. at 672, 331 A.2d at 190.

Using this description, one hour after the crime had been committed, the officer spotted the appellant one block from the scene of the crime. Although he noted that the appellant wore light colored trousers and no shirt rather than the described dark clothing, the officer placed Mr. Jackson under arrest. The appellant confessed to the crime several hours later.

In denying probable cause at the time of arrest, the Pennsylvania Supreme Court used the following test, "whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator." 459 Pa. at 674, 331 A.2d at 191.

The police officer in *Jackson,* had a general description of the suspect's height, general build, hair length and complex-

ion shade. Yet this was not deemed specific enough to set apart the appellant from other black males in the area. In the present case, the description supplied to Officer Morina only generally fit in two categories–complexion shade and outerwear attire. Surely, if four areas of description are not specific enough, two cannot be.

Once it has been established that the arrest was illegal due to the lack of probable cause, the "fruits" of the arrest must be suppressed. The test established by the United States Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is pertinent, "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 498, 83 S.Ct. at 417.

In *Commonwealth v. Whitaker*, 461 Pa. 407, 336 A.2d 603 (1975), the test used by the Pennsylvania Supreme Court was very similar to that found in *Wong Sun*, "whether challenged evidence has been sufficiently purged of an impermissible taint, here the clearly unlawful arrest, to render it admissible must be determined from the totality of the circumstances surrounding each particular case." 461 Pa. at 413, 336 A.2d at 607.

In this case, it is clear that the seizure of the bullets and the resulting search of the car which uncovered the gun were direct fruits of the illegal arrest and cannot be purged from it. We find, therefore, the gun to be a fruit of the initial illegality, and as such should have been suppressed. Without the gun, the Commonwealth cannot meet its burden of proof regarding the charges of carrying a firearm without a license and carrying firearms on public streets. Judgment and sentence of the court below is reversed.

HOFFMAN, J., concurs in the result.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I dissent.

The majority has reached its decision largely based upon its interpretation of the facts with regard to the respective heights of the appellant and his alleged codefendant. I would hold that the police had more than adequate information concerning the height of defendants. The appellant was shorter than his companion. Clearly, in the eyes of an onlooker, the appellant would be short in contrast to the other man. Such descriptions by a layman must be viewed in relation to the defendants and not to the population generally. The police also knew that the shorter of the two men had a lighter complexion than the taller and that he was wearing a blue coat. The taller man was identified as having a darker complexion. The record discloses that these facts existed.

Finally, the lower court determined the police possessed sufficient information because they were notified that they would find these men at or near 1745 North Sydenham Street. They in fact discovered the appellant near the address at which he was described to have been.

The information by the police was greater than that in *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976) where police knew only that a black youth who was allegedly involved in a gang fight and stabbing was running from the incident. Certainly there could have been numerous youths running in the neighborhood of the incident who were either fleeing it in fear of what happened there or running for any number of other reasons. Ours is a situation unlike that in *Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980) where a man who very generally fit a description of an alleged rapist was apprehended in the neighborhood of the rape twenty minutes after the police had been alerted. Here the apprehension occurred shortly after the informant's report was received by the arresting officers.

Finally, I am also aware of our Supreme Court's decision in *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975) but believe the facts therein are clearly distinguishable. There the police were given a description of two males in dark clothing, 5'6" to 5'8" in height, with medium builds, medium to dark complexions and semi–bush haircuts[,]" who had allegedly committed a crime. Id., 459 Pa. at 672, 331 A.2d at 190. However, the informant's information in the instant case distinguished the men by height and clothing and tied them to a specific location. In my view, the police were given more information in the instant case.

I recognize that our decision today is basically one requiring this court to draw a line indicating where police possess sufficient information to have probable cause to arrest an individual. My disagreement with the majority comes solely with regard to the position at which we are to draw that line. I would hold that the police had sufficient information on which to have probable cause to make an arrest.

I would, therefore, affirm the decision of the lower court.