J-S40041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANTE  COOPER | : | No. 728 EDA 2017 |

Appeal from the Order Entered February 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003403-2016

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 06, 2018**

The Commonwealth of Pennsylvania (Commonwealth) appeals[1] from the trial court's order suppressing physical evidence (drugs and U.S. currency) following the arrest of Appellee, Dante Cooper.  After careful consideration, we affirm on the basis of the trial court opinion.

On February 24, 2016, uniformed Philadelphia Police Officer Floyd Shade and his partner, Officer Phil Cherry, were driving an unmarked car on the 1300 block of South Dover Street in South Philadelphia en route to the 1500 block of Dover Street to investigate drug sales.  Officer Shade is a fifteen-year veteran of the police department, an experienced narcotics officer who had participated in 300 narcotics investigations in his career with more than 50 of

---

[1] The Commonwealth has certified that the suppression order terminates or substantially handicaps the prosecution of this case.  **See** Pa.R.A.P. 311(d); **Commonwealth v. Dugger**, 486 A.2d 382 (Pa. 1985).

---

*   Retired Senior Judge assigned to the Superior Court.

those investigations conducted in that same area in South Philadelphia. As the officers proceeded down the 1300 block of South Dover Street, they encountered an idling Ford Windstar minivan that was blocking their lane of travel. Both the driver's seat and passenger's seat of the minivan were occupied. The passenger-side door of the van was open and two women were standing by the open door. Officer Shade observed one of the women lean into the van, stick both of her hands inside, and then remove only her left hand from the van. She used two of her left-hand fingers to place something in her pants' pocket. Officer Shade could not see what, if anything, the woman placed in her pocket.

Officer Shade immediately activated his emergency lights and audibly notified the minivan occupants and the women standing by the van that they were not free to leave. The officer told Cooper, the passenger in the minivan, specifically, "Don't move. Sit Still." N.T. Suppression Hearing, 1/31/17, at 16. Officer Shade then called for a back-up officer, who frisked the woman who reached into the van; he found a Percocet pill in her possession. Officer Shade then removed Cooper from the van and placed him under arrest. A search incident to Cooper's arrest uncovered numerous Oxycodone, Percocet, other prescription pills, a chunk of cocaine, and $1,653.00 in U.S. currency on his person. Cooper was charged with possession of a controlled substance with the intent to deliver;[2] he filed a pre-trial motion to suppress. After a hearing

---

[2] 35 P.S. § 780-113(a)(30).

- 2 -

on the motion, the court determined that the police lacked probable cause to search the woman and, thus, granted Cooper's motion to suppress. The Commonwealth filed a timely motion for reconsideration. The court vacated its suppression order and scheduled a hearing. At the conclusion of the reconsideration hearing, the court reaffirmed its prior order granting suppression.

The Commonwealth filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors raised on appeal. The Commonwealth presents one issue for our review: "Could an experienced narcotics officer lawfully arrest defendant after: (1) observing a woman in a high drug [and] crime area withdrawing her hand from where defendant was seated in a car that was blocking a traffic lane; (2) observing her stuff an object in her pocket; and (3) verifying that the object was contraband?" Commonwealth's Brief, at 6.

Our standard of review of a trial court's order granting a defendant's motion to suppress evidence is well-settled:

> When the Commonwealth appeals from a suppression order, the appellate court considers only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. The appellate court defers to the trial court's findings of fact, because it is the fact-finder's sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa. Super. 2011) (citations and internal quotation marks omitted).

After reviewing the parties' briefs, the certified record on appeal, and relevant case law, we agree that the court properly suppressed the evidence uncovered from Cooper's arrest. When Officer Shade stopped Cooper's vehicle and, as he approached the van, told Cooper, "Don't move, sit still," the occupants of the car and the women standing by the car reasonably believed they were not free to leave. Thus, they were effectively in custody. Although Officer Shade had extensive experience in narcotics investigations and the incident occurred in a high-crime/drug area, based on a totality of the circumstances, he did not have probable cause to arrest at that point. *See Commonwealth v. Whitlock*, 69 A.3d 635 (Pa. Super. 2011) (even where officers had experience in narcotics investigations and were in high drug/crime area, because officers could not see what was contained inside wrapped package dropped in basket, it was not immediately apparent to officers men were engaged in illegal activity and, therefore, no probable cause existed under totality of circumstances). Therefore, the subsequent search incident to arrest of Cooper was illegal and all evidence that flowed from his arrest was properly suppressed. We rely upon the cogent opinion,[3] authored by the

_____

[3] To the extent that the Commonwealth contends the trial court impermissibly based its reconsideration decision on a different legal theory than that put forth in its Pa.R.A.P. 1925(a) opinion and upon which it initially granted the motion to suppress, we note that we agree with the trial court's initial

Honorable Jeffrey P. Minehart, to affirm the trial court's suppression order. We instruct the parties to attach a copy of Judge Minehart's decision in the event of further proceedings in the matter.

    Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/18

---

suppression conclusions which mirror the court's analysis and legal conclusions detailed in its opinion. **Commonwealth v. Thompson**, 778 A.2d 1215, 1223 n.6 (Pa. Super. 2001) (it is well settled that we may affirm trial court on different grounds).

FILED

OCT 2 5 2017

Office of Judicial Records
Appeals/Post Trial

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, Appellant | . COURT OF COMMON PLEAS . PHILADELPHIA COUNTY : |
| vs. | : NO.: CP-51-CR-0003403-2016 |
| DANTE COOPER | : CP-51-CR-0003403-2016 Comm v Cooper, Dante Opinion : |

CP-51-CR-0003403-2016 Comm v Cooper, Dante
Opinion

8021229891

OPINION

The Commonwealth has appealed the grant of the above-named defendant's Motion to Suppress Physical Evidence. For reasons set forth below, it is suggested that the order suppressing evidence be affirmed.

**PROCEDURAL HISTORY**

Dante Cooper (hereinafter "defendant"), was charged with Possession of a Controlled Substance (35 P.S. § 780-113 §§ A16) and Possession with Intent to Deliver a Controlled Substance (35 P.S. § 780-113 §§ A30), following his arrest on February 24. 2016  On January 31, 2017, defendant litigated a motion to suppress physical evidence – a multitude of drugs and $1653 cash – which this Court granted at the conclusion of the suppression hearing. On February 3, 2017 the Commonwealth filed a motion seeking reconsideration of this Court's suppression order, which was denied after argument on February 10, 2017.

On February 24, 2017, the Commonwealth filed a notice of appeal and thereafter a requested Pa.R A.P. 1925(b) statement, wherein they assert that this Court erred in holding that there was no probable cause to arrest and search defendant, and as a result the

1

Court erred when granting defendant's motion to suppress physical evidence. Specifically, the Commonwealth asserts:

> Based on the officers' training and experience, and the search of the female buyer seen interacting with the defendant, probable cause existed to stop and search the defendant after officers observed what they believed to be a narcotics transaction.

## FACTUAL HISTORY

On February 24, 2016, Philadelphia Police Officer Floyd Shade and his partner, Officer Phil Cherry, were in full uniform driving in an unmarked car on the 1300 block of South Dover Street in South Philadelphia around 2:20 p.m., to another hundred block of Dover Street to investigate reports of drug sales when they were impeded by a minivan blocking the single driving lane. (N.T 1/31/17, 5-6, 12-13). The front passenger door of the minivan was open and occupied, as was the driver's seat, and there were two women, one older and one younger standing by the open door (N.T. 1/31/17, 6-8, 26). The older woman leaned into the minivan and stuck both her hands inside of it. (N.T. 1/31/17. 8). Officer Shade then saw her left hand come out of the van and using two fingers on that hand the woman stuffed whatever was in her hand into a pocket of her sweatpants. (N T. 1/31/17, 8-9). Officer Shade stated that he could not "see anything" at that point, including what, if anything, the woman put into her pocket or the exchange of U.S. currency. (N T. 1/31/17, 9, 23).

Officer Shane further testified that he has been a police officer for fifteen years and that was an experienced narcotics officer who has participated in 300 narcotics investigations s in his career, more than fifty of which were conducted in the area where he observed the minivan. (N.T. 1/31/17. 9-10). He added that that that particular area of

2

South Philadelphia was a high crime area and that in his experience ninety percent of illegal narcotics sales were "drive-up" sales. (N.T 1/31/17. 10, 12).

Based on what he saw the older woman do with her hand, Officer Shade immediately activated his vehicles emergency lights and audibly notified the persons present that they were not free to leave. ( N.T. 1/31/17, 16). He also told the passenger in the minivan, "Don't move. Sit still." but did not remove him from the minivan. ( N.T 1/31/17, 27).

Officer Shade then called a back-up officer, who arrived in about a minute thereafter and stopped the woman, who was then frisked and found to possess a Percocet pill. (N.T. 1/31/17, 12-13, 31). Officer Shade then pulled the passenger, defendant herein, out of the minivan and arrested him. (N T. 1/31/17, 12-13) Officer Shade said that he decided to pull defendant out of the minivan and place him under arrest at that moment because of the discovery of the Percocet pill in the woman's possession, which caused him to conclude, based on his experience as a police officer, that he had observed a narcotics transaction between the woman and defendant. (N.T. 1/31/17, 14). He then conducted a search incident to arrest of defendant and recovered numerous Oxycodone, Percocet, Volume [sic] pills, a chunk of crack cocaine, and $1,653.00. (N T. 1/31/17, 14-15).

## DISCUSSION

As noted above, the Commonwealth asserts that police had probable cause to arrest and search defendant based on what Officer Shane observed in light of his experience and the discovery of the Percocet pill on the woman This Court disagrees and suggests that the order granting the motion to suppress be affirmed.

3

When the Commonwealth appeals an adverse ruling of a suppression court, they are "required to meet the same burden as a defendant who has lost in the court below" Commonwealth v. Hamlin, 463 A.2d 137, 139 (Pa. Super. 1983). Thus, a reviewing court must consider only the non-moving party's witnesses, and so much of the evidence for the prosecution which appears to be uncontradicted in the context of the record as a whole. *Id*

In Pennsylvania, three types of interactions between a police officer and a civilian have been defined:

> Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Mendenhall, 715 A.2d 1117, 1119 (Pa. 1998) (citing Commonwealth v. Polo, 759 A.2d 372, 375 (2000)).

Instantly, this Court determined that when the two police officers, who were uniformed, ordered that everyone "Don't move. Sit still." they subjected defendant to a custodial detention and that the discovery of the Percocet pill was of no relevance to the issue of whether the police had probable cause to arrest defendant. The standard as to whether an interaction with police rises to the level of a custodial detention, *i e.*, an arrest, is an objective one based on the totality of the circumstances. Commonwealth v. Gwynn, 723 A.2d 143, 148 (Pa. 1998). Due consideration must be given to the reasonable

4

impression conveyed to the person subject to the seizure rather than the strictly subjective view of the police officer or the person subject to the seizure. Id Several factors are considered in determining whether a detention is investigative or custodial. Commonwealth v. Busch, 713 A.2d 97, 101 (Pa. Super. 1998). These factors include "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why, whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions " Id. The Superior Court, applying a conjunctive test, has stated that "... an arrest exists when (1) the police intended to take appellant into custody, and (2) appellant was subjected to the actual control and will of the police " Commonwealth v Hannon, 837 A.2d 551, 553, 554 (Pa. Super. 2003), citing Commonwealth v. Lovette, 450 A.2d 975, 978 (Pa. 1982) The Court further stated that the "test is an objective test, and all circumstances must be viewed 'in the light of the reasonable impression conveyed to the person subjected to the seizure.' " Hannon, 837 A.2d at 554, quoting Commonwealth v. Butler, 729 A.2d 1134, 1137 (Pa. Super. 1999).

Finally, the well-established standard for what constitutes an arrest in Pennsylvania was set forth in Commonwealth v. Bosurgi, 190 A.2d 304 (Pa. 1963), as follows:

> Was Bosurgi under arrest at the time of the search of his person? Officers are not required to make any formal declaration of arrest or use the word "arrest" nor to apply manual force or exercise "such physical restraint as to be visible to the eye" in order to arrest a person. An arrest may be accomplished by "any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest."

Bosurgi, 190 A.2d at 311 (emphasis in original) (citations omitted).

5

In Hannon, supra the Superior Court held that an arrest occurred where police approached a car in which the defendant was seated, ordered him out of the car and immediately restrained him with handcuffs, reasoning that "[a] person subjected to this seizure would reasonably believe that he was under the control of the police and that the police intended to take him into custody when he was ordered out of the car at gunpoint and restrained with handcuffs." Hannon, 837 A.2d at 554. The Court further opined that the fact that the police did not call the detention an arrest was irrelevant, since there is no requirement that police use the word "arrest" for the action to constitute an arrest. Hannon, 837 A.2d at 554, citing Commonwealth v. Bosurgi, 190 A 2d 304, 311 (Pa. 1960).

Our Supreme Court has affirmed lower court findings of an arrest in a variety of circumstances, including those short of the actual physical restraint of an individual that occurred here. See, e.g., Commonwealth v. Nelson, 411 A.2d 740, 741 (Pa. 1980) (custodial detention found where defendant summoned to patrol car by officer); Steding v. Commonwealth, 391 A.2d 989 (Pa. 1978) (arrest found where defendant not permitted to leave baggage claim area); Commonwealth v. Greber, 385 A.2d 1313 (Pa. 1978) (arrest found where; by positioning of his automobile, officer blocked defendant's automobile from moving).

In Commonwealth v. Duncan, 525 A.2d 1177 (Pa. 1987), the Court concluded that the defendant was placed under arrest during the investigation of a theft when the police summoned him up a flight of stairs believing that they had discovered proceeds. Likewise, in Commonwealth v. Woodson, 493 A.2d 78 (Pa. Super. 1985), this Court used the definition of arrest in Bosurgi and held that Woodson was under arrest while he was being

6

detained and questioned by police in an alley behind a house where a burglary had been reported.

It is apparent that the police conduct in the present case was more coercive and intrusive than the police action in both Duncan and Woodson. If an arrest occurs when the police stop and question a suspected burglar behind a victimized residence, or when police summon a suspected thief up a flight of stairs, then there can be no doubt that defendant was seized when he was ordered not to move and two police officers entrapped him in the minivan. Any person, if confronted by the circumstances herein, reasonably would have assumed that he was not free to leave and was under arrest. Defendant was not free to ignore the order and had to comply.

Consequently, because this was an arrest police needed probable cause to justify their actions and, simply put, probable cause did not exist. "In order to justify custodial detention, the police must have probable cause to believe than an offense has been or is being committed." Dunaway v. New York, 442 U.S. 200, 216 (1979)." Commonwealth v Brown, 565 A.2d 177, 178-79 (Pa. Super. 1989). In Pennsylvania, the standard for evaluating whether probable cause exists is the 'totality of the circumstances' test set forth in Illinois v. Gates, 462 U.S. 213 (1983). See Commonwealth v. Baker, 518 A.2d 802 (Pa. 1986); Commonwealth v. Gray, 503 A.2d 921 (Pa. 1985). The bench mark of a warrantless arrest is the existence of probable cause, namely, whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. Commonwealth v. Wagner, 406 A.2d 1026 (Pa. 1979); Commonwealth v. Rodriguez, 585 A.2d 988, 990 (Pa.

7

1991). See also Commonwealth v. Fromal, 572 A.2d 711, 717 (Pa. Super. 1990); Commonwealth v. Butler, 512 A.2d 667, 669-670 (Pa. Super. 1986). It is important to note that a police officer's belief that probable cause to arrest exists must be linked with an observation of suspicious or irregular behavior on the part of the particular defendant seized. Commonwealth v. Nicks, 253 A.2d 276, 280 (Pa. 1969); Commonwealth v. Wilson, 655 A.2d 557 (Pa. Super. 1995).

Instantly, police did not have probable cause to arrest defendant at the moment they ordered defendant not to move while he was sitting in the minivan. Although Officer Shade observed the woman withdraw her left hand from inside the minivan and then stick two fingers inside a pocket of her sweatpants, he observed nothing else. He did not see anything passed to the woman or anything in her hand and he did not observe the woman pass anything back to either defendant or the driver. In addition, although Officer Shade testified that he was able to discern that the woman was interacting defendant inside the van, this Court deemed that testimony not credible. See N.T. 1/31/17, 25-26. In essence, all the officer observed was the woman appear to place something in her pocket. That was not enough to effectuate an arrest under the law because the officer did not observe an **exchange** of items or a transaction of any sort.

In Commonwealth v. Banks, 658 A.2d 752 (Pa. 1995), the Supreme Court held that probable cause cannot arise from the observation of a transaction involving an exchange of money for unidentified property, even when afterward the defendant flees from the police. Banks, 658 A.2d at753-54 (Pa. 1995). In holding that the police had no probable cause to arrest Banks, the Banks court stressed that probable cause cannot arise from a police officer observing a "single, isolated exchange of currency for some

8

unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer." Id. The Banks court noted that additional factors - such as actually observing the drugs themselves or containers commonly used to hold drugs, seeing multiple, complex suspicious transactions, or responding to a citizen's complaint or an informant's tip -- must be present to give rise to probable cause, and such additional factors were not present in the case. See id. Instantly, there was no exchange and thus, the facts in favor of suppression were greater than in Banks.

Here, the additional factors the Commonwealth states established probable cause were the experience of Officer Shane, his bald claim that the area was a high crime area, and the discovery of the Percocet pill in possession of the woman.. None of these factors, established probable cause under the totality of circumstances test.

While a police officer's training and experience are "relevant factors" in determining whether probable cause exists, Commonwealth v. Thompson, 985 A.2d 928, 935 (Pa. 2009), the Pennsylvania Supreme Court cautioned that an officer's testimony in this regard must not simply reference "training and experience" without an explanation of how that training and experience specifically applies to the situation at hand. Id. at 935. Training and experience is only relevant if there is some connection to the issue at hand. More than simply testimony of the number of years an officer has spent on the force is needed. Id.

Instantly, the officer did not see an exchange of items, including U.S currency, what, if anything, the woman placed in his pocket, or objects usually connected to the illicit sale of narcotics. Thus, the officer's experience was irrelevant in this Court's view with respect to the issue whether it gave the officers probable cause to arrest defendant even

9

when considered in conjunction with the other factors then existing. It is important to note that the officers were not even investigating drug sales on that block and were heading to another location when they saw the woman lean into the vehicle and then stick her hand inside her pocket.

The Court further concluded that the fact that Officer Shade indicated that the area was a high crime area, when considered with the other factors then existing, did not establish probable cause. That is because the officer claimed that all of South Philadelphia is a high crime area thereby diluting his testimony in that regard. Moreover, because Officer Shade did not see a transaction or exchange, items related to drug sales, or anything remotely suggesting that a crime was taking place, his assertion that it was a high crime area was of little relevance even considering the other factors. See Thompson, supra (indicating that officer's experience was a relevant factor in determining that probable cause existed based on the officer's observation of a transaction).

Finally, the discovery of the Percocet tablet occurred after defendant had already been arrested, rendering it irrelevant to the question whether probable cause existed at the time defendant was arrested, namely when the officers prohibited defendant from leaving the minivan

Even though the officer was probably testifying in good faith regarding his perceptions, simple "'good faith on the part of the arresting officer is not enough. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects, in the discretion of the police ["] Terry, 392 U.S. at 21-22(citations and footnotes omitted).

10

In Commonwealth v. Greber. 385 A.2d 1313 (Pa. 1978), police officers were conducting surveillance in a high crime area at night when they saw a juvenile in a parking lot. When a car pulled into the lot, the juvenile approached and spoke with the occupants. One of them handed the juvenile a bag, which he held up to his face as if to smell it. He then passed money to someone in the car. Knowing from experience that narcotics are commonly smelled before payment is made, the officer believed he had witnessed a drug transaction. Despite the "high crime area" and the officer's experience with behavior typical, in the officer's opinion, of a drug transaction, the Supreme Court, , found that there was not even reasonable suspicion to stop the defendant, let alone probable cause to arrest him.

In Commonwealth v. Tither, 671 A.2d 1156 (Pa. Super. 1996), an officer, while on patrol in a high drug and prostitution crime area, heard someone suddenly yell "5-0, 5-0" (street jargon warning of the presence of police), and then observed the defendant in that case, who had been reaching into a car, leave the car and enter a building upon hearing the "5-0" call, at which time the car immediately pulled away. Even though the officer suspected that he had witnessed an aborted drug transaction, this Court held that sufficient facts did not exist to even support the investigatory detention of that defendant.

These cases all support the suppression of the evidence in this matter and based on their application to the present matter, it is clear no error occurred in finding that the arrest of defendant was illegal.

Finally, because the warrantless arrest of appellant was illegal everything that flowed therefrom, including the search of defendant and the seizure of the drugs and U.S.currency was tainted and required the suppression of evidence under the fruit of the

11

poisonous tree doctrine. See Commonwealth v. Gibbs, 563 A.2d 1244, 1246 (Pa. Super. 1989) (holding that the fruit of the poisonous tree doctrine excludes evidence seized as a result of illegal police conduct).

Accordingly, for all of the foregoing reasons, it is suggested that the order of this Court granting defendant's motion to suppress be affirmed.

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the order of this Court granting defendant's motion to suppress be affirmed.

By the Court,

Date: 10/25/17

Jeffrey P. Minehart

12