## Commonwealth *v.* Davis, Appellant.

Submitted November 13, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John F. X. Fenerty* and *Charleston & Fenerty, P. C.,* for appellant.

*James J. Wilson* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 24, 1974:

Frederick Davis was convicted by a jury of murder in the second degree and of conspiracy. After post-trial motions were denied, a prison sentence of five to fifteen years was imposed on the murder conviction. Davis filed this appeal.

The Commonwealth's testimony at trial which was uncontradicted[1] established the following facts:

About 10 p.m. on December 29, 1969, Davis and six other youths attacked one Edward Paul Sweeney as he walked along Erie Avenue in Philadelphia.[2] Dur-

---

[1] Davis did not testify or offer any witnesses on his own behalf at trial.

[2] Sweeney was apparently unknown to his attackers. He was walking to his residence carrying a bag of groceries at the time involved.

ing the attack, Sweeney was knocked to the ground and suffered six knife wounds; two of which penetrated his left lung. Two of the knife wounds were inflicted by Davis personally. Sweeney died from the wounds shortly after the attack.

At trial evidence of two oral statements Davis made to the police, wherein he admitted stabbing Sweeney, was introduced against him.[3] It is now contended the admission of this evidence violated due process because: (1) "the circumstances surrounding appellant's arrest were beyond the scope of acceptable constitutional standards, thereby rendering same illegal and all fruits secured thereafter, inadmissible"; and (2) since "the oral statements were made by the appellant, a minor, in the absence of counsel or without the benefit of parental guidance he could not make a knowing and intelligent waiver of his constitutional rights."

The contention that "the circumstances surrounding appellant's arrest were beyond the scope of acceptable constitutional standards," and, hence, illegal is based solely on the fact Davis was not advised of his "*Miranda*" rights at the time he was taken into police custody.[4]

The warnings mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), were established in order "to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S. Ct. at 1612. There is no requirement that these warnings be given at the moment of the arrest. What is required is that they be given before any police questioning begins in order that the accused may fully understand his rights before in-

---

[3] A pretrial motion to suppress this evidence was denied after an evidentiary hearing.

[4] It is not asserted the arrest occurred without probable cause. It is undisputed in the record that the arrest took place after one of the other participants in the Sweeney attack confessed to the police and implicated Davis.

criminating himself as a result of such questioning. See *Commonwealth v. Fogan*, 449 Pa. 552, 296 A. 2d 755 (1972); *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A. 2d 796 (1972); and *Commonwealth v. Marabel*, 445 Pa. 432, 285 A. 2d 152 (1971). The failure to give such warnings at the moment of arrest does not, in itself, render the arrest illegal. Nor was the challenged evidence inadmissible merely because Davis was uncounseled at the time it was obtained.

The pertinent facts, as disclosed by the record, are these:

At the time of the arrest, Davis was over sixteen years of age having been born on June 27, 1953. He had a tenth-grade education and was of average intelligence. He was taken into custody at his home about 12:45 a.m. on December 31, 1969. His father was advised of the Sweeney homicide and that his son was wanted for questioning about his involvement, because his name had been mentioned to the police during the investigation. Mr. Davis was invited to accompany his son to police headquarters, but declined.

Davis arrived at police headquarters about 1:05 a.m. He was immediately given the warnings mandated by *Miranda* and affirmatively signified he understood. He was then questioned for the first time and the questioning continued for about an hour or until 2:10 a.m. Davis unhesitatingly admitted his involvement in the Sweeney attack and that he inflicted some of the knife wounds. At about 6:45 a.m., the questioning was resumed and again without hesitation Davis gave his version of the attack and admitted his participation. We also note there is no assertion or evidence in the record Davis was abused or threatened by the police at any time; nor is there any assertion or evidence in the record that he was not given timely warnings of his *"Miranda"* rights or that he failed to understand them. Finally, it is undisputed in the

record that at no time during the questioning, did Davis ever request the assistance of a parent or an attorney before he incriminated himself. The only contention is that because of his age, Davis lacked the ability to fully understand the *"Miranda"* warnings, and, hence, could not intelligently waive the rights which they encompass.

This Court has previously rejected the adoption of the prophylactic rule advocated herein, and particularly so, where a sixteen-year-old is concerned. See *Commonwealth v. Porter,* 449 Pa. 153, 295 A. 2d 311 (1972), and *Commonwealth v. Moses,* 446 Pa. 350, 287 A. 2d 131 (1971). We reaffirm this position. In determining if an effective waiver occurred in a case where the accused is sixteen years of age, the totality of the circumstances must be considered, and, when so considered instantly, we rule the trial court did not err in concluding a knowing and intelligent waiver was effected.

The final assignment of error involved a portion of the district attorney's summation to the jury.

As noted before, the record discloses that when Davis was taken from his home to police headquarters, his father was invited to accompany him and refused. However, defense counsel implied during his argument to the jury that the police did not want the appellant's father present. He stated, inter alia: "[I]f there is any doubt about why a 16 year old boy should be brought in without his father there, when the father could have been brought there? If he was going to give an oral statement, couldn't the father have been there, and remove some doubt about under what conditions it may have been given?" This argument was answered by the district attorney during his summation in the following manner: "You heard Detective Gibbons testify that when he went to the house, he told the father that he could come down with him;

they would furnish transportation for him. But the father indicated at that time that either he didn't want to come down or that he would come down later or that he wasn't too interested in coming down. But he did come down somewhat later in the day, somewhere around 9:00 o'clock."

"The father never took the stand to say that he was urgently interested—[in coming down]." It is now urged that the comment of the district attorney that "the father never took the stand" etc. was violative of Article 1, Section 9 of the Constitution of Pennsylvania which states that in all prosecutions the accused "cannot be compelled to give evidence against himself." We are not so persuaded. The comment did not concern the failure of Davis to testify personally [see *Griffin v. State of California*, 380 U.S. 609, 85 S. Ct. 1229 (1965)], nor was it a reflection on Davis' failure to present evidence of his own innocence. Moreover, in view of the argument of defense counsel, the comment was eminently proper. Cf. *United States v. Cox*, 428 F. 2d 683 (7th Cir. 1970).[5]

---

[5] *Commonwealth v. Black*, 186 Pa. Superior Ct. 160, 142 A. 2d 495 (1958), cited by appellant is inapposite. In *Black*, the defendant was prosecuted for involuntary manslaughter for the death of a passenger as the result of an accident occurring from the defendant's reckless driving. At trial, the defendant asserted as a defense, that the deceased was the driver of the vehicle. However, a police officer testified that during an interview with the defendant while he was in the hospital for injuries he sustained in the accident, the defendant admitted that he was driving his car when the accident occurred. Defendant's father was present at the time of this admission, although he was engaged in conversation with another officer, and may not have heard his son's incriminating statement. In *Black*, the assistant district attorney commented adversely during final summation upon the defendant's failure to call his father as a witness that the admission was not made. The defense attorney made a timely objection which was overruled by the trial judge. The Superior Court reversed the defendant's conviction of involuntary manslaughter on the ground

Judgment affirmed.

Mr. Justice ROBERTS, Mr. Justice NIX, and Mr. Justice MANDERINO concur in the result.

---

that since the "witness [was] actually available to both parties, it [was] error to permit the jury to draw unfavorable inferences against one of the parties for failure to call such witness *unless it first appeared that the witness had knowledge or had peculiar means of knowledge of facts germane to the issue.*" [Emphasis added.] Id. at 165, 142 A. 2d at 498.

*Black* differs from the instant case in that therein the father may not have heard the conversation, and, therefore, his failure to testify that his son did not make the incriminatory admission in his presence would not necessarily indicate a weakness in his son's position but might only indicate that the father had not heard the conversation. The instant case is one in which the father undeniably had personal knowledge as to whether the police notified him that he could come to the police station with his son. Therefore, at least in this regard, the present case is materially different from *Black*.

Further, in *Black*, "the erroneous comment to the jury of the assistant district attorney . . . related directly to one of the essential matters of fact before the jury." Id. at 167, 142 A. 2d at 499. The remark concerned the central issue in the case, that is, who was driving the vehicle. The instant case again differs from *Black* in that the district attorney's comment only concerned a collateral matter—whether the police preferred to question the suspect away from the presence of a parent. Such a finding has only tangential importance to the question of voluntariness of a confession, and is not "one of the essential matters of fact before the jury."