351 A.2d 663

**COMMONWEALTH of Pennsylvania**

v.

**Louis STANTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 7, 1975.

Decided Jan. 29, 1976.

Rudolph S. Pallastrone, Geo. A. Bachetti, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., B. H. Levintow, Philadelphia, for appellee.

144

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Louis Stanton, was tried by a judge and jury on May 20, 1971, and was convicted of murder in the first degree on April 27, 1970, of David Fineman. On September 6, 1973, post-trial motions were denied by the court en banc and appellant was sentenced to life imprisonment. This appeal followed.

Appellant, age sixteen at the time of his arrest, argues that his confession should have been suppressed because of the lack of parental or interested adult consultation prior to the waiver of his *Miranda* rights. We agree.

The facts surrounding appellant's confession are as follows. On April 27, 1970, at 11:40 p. m., two Philadelphia police officers arrived at appellant's home and arrested him in connection with a murder investigation of the slaying of David Fineman at Thirteenth and Diamond Streets. At 12:10 a. m. on April 28, 1970, appellant arrived at the Police Administration Building and shortly thereafter was informed that he was arrested for the murder of David Fineman and was read his *Miranda* rights. At 12:30 a. m., appellant admitted participation in the shooting, and between 12:30 and 1:30 a. m., he was further interrogated as to the details of the murder. At approximately 2:30 a. m., appellant's aunt, Lorraine King, was admitted to the interrogation room and spoke with appellant. Shortly thereafter the detective returned, again warned appellant of his *Miranda* rights, and proceeded to take his formal statement, which was substantially the same as his informal oral statement.

In *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975), this court stated:

". . . absent a showing that a juvenile had an opportunity to consult with an interested and informed

parent or adult or counsel before he waived his Miranda rights, his waiver will be ineffectual."

See *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975), *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975), and *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974). In the instant case, the Commonwealth admits that appellant's aunt did not meet with appellant until after the giving of the oral statement which was substantially the same as the formal confession. Under these facts and in light of our *Chaney* decision, appellant's confession must be suppressed.[1]

Judgment of sentence reversed and case remanded for proceedings consistent with this opinion.

JONES, C. J., filed a dissenting opinion in which EAGEN, J., joined.

POMEROY, J. filed a dissenting opinion.

JONES, Chief Justice (dissenting).

The majority today reverses a judgment of sentence for murder in the first degree on the basis of a constitutional rule developed in *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974). The case of *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975), was also cited. However, that case and the language quoted therefrom merely reflects the majority's reading of what the three above cited cases have held. It is that reading which establishes a per se rule dictating that a juvenile can never knowingly and voluntarily waive his or her *Miranda* rights without first having the benefit of interested-adult guidance.

It is beyond me how the majority without explanation or supportive reasoning can establish a per se rule of

---

1. Appellant raised additional allegations of error which we need not discuss in view of our resolution of the instant issue.

constitutional law from *McCutchen, Starkes* and *Roane.*
With such a rule we find that a highly intelligent, well-
educated seventeen year old is incapable of a valid waiv-
er, while a moronic eighteen year old, as little as two
days the elder, could validly waive. Certainly the Con-
stitution draws no such arbitrary distinction.

I offer you the following reading and analysis of those
three cases with supportive reasoning in an attempt to
point out what I consider to be an obvious misconstruc-
tion on the part of the majority.

In *McCutchen*, this Court stated:

"*Under these facts*, it is clear that prior to appellant
giving his first confession, which was in essence the
same as his later formal confession, appellant, age fif-
teen, was not given the opportunity to consult his
mother before he waived his rights, an opportunity, in
our opinion, mandated by our *Roane* decision." 463
Pa. at 92–93, 343 A.2d at 670. [Emphasis added].

However, in *McCutchen*, the Court was dealing with
more than the narrow issue of whether a valid waiver
was present. Rather, the detailed description of the
facts leading up to the confession indicated that the
Court was concerned with the voluntariness of the con-
fession, as well as the included question of waiver.

Justice Eagen in his dissent in *Roane, supra*, clearly
delineates the separate incidents of the questions dealt
with in *McCutchen*:

"The underlying fear of the line of cases which con-
front the issue of juvenile waivers has centered around
two considerations: First, the will of the juvenile may
be overborne by police tactics and he may become a
victim of fear, panic or coercion in the face of the
presence of the law and give either an involuntary or
untrustworthy statement. Second, because of his ten-
der years he will not be able to understand his consti-
tutional rights or the consequences of waiving these

rights; thus, he does not effectively enjoy the benefits of his constitutional rights, or the protections which these rights provide." 459 Pa. at 397–398, 329 A.2d at 290 (1974).

In *McCutchen*, the appellant was picked up for questioning at 6:30 p.m. on the street and read his rights. He was then transported to police headquarters and at 7:00 p.m., upon arrival, was again read his rights. At that time he agreed to respond to questioning. If the Court were dealing solely with the issue of waiver, then the only relevant facts would be the appellant's age, education, intelligence, and conditions of transportation and custody prior to his waiver at about 7:00 p.m. Facts occurring after the waiver took place are not relevant to a pure waiver inquiry, but rather demonstrate unreliability or untrustworthiness of the confession.

With this in mind the Court, in *McCutchen*, detailed that the juvenile was subject to continuous questioning from 7:15 p.m. until 9:25 p.m. during which he denied all involvement. McCutchen was then permitted to rest for one hour. He then agreed to submit to a lie detector test. He was again questioned for over one hour in what was described as a pretest interview. The test was then administered and McCutchen was informed of the resulting discrepancies at which time (approximately midnight) he confessed. All of these facts occurred after the waiver by McCutchen. The Court in reaching its decision was concerned not simply with the waiver question. Rather, the issue which was decided was that, ". . . his (McCutchen's) confession should have been suppressed because he was not given the benefit of parental or interested-adult guidance prior to giving his confession." 463 Pa. at 91, 343 A.2d at 670 (1975). The case does not simply stand for the proposition as the majority today asserts that a juvenile's confession must be suppressed whenever interested-adult guidance is absent prior to the *waiver*. In view of the above, *Mc-*

*Cutchen* does not require that in all cases involving the narrow issue of a juvenile waiver an interested adult must be present.

In *Commonwealth v. Starkes, supra,* the juvenile was also questioned over an extended period during which time he denied all involvement. The detectives, after intermittent questioning for three hours, admitted Mrs. Starkes without having read to her her son's constitutional rights. Mrs. Starkes, unaware of her son's rights, coaxed him to confess. It was this use of the uninformed mother as an interrogative tool by the police, coupled with the length of questioning, which led the Court to find Starkes' confession inadmissible. Just as in *McCutchen,* the Court was dealing with the broad issue of admissibility of the confession, considering all that that question entails.

In *Commonwealth v. Roane, supra,* which was the determining law in both *Starkes* and *McCutchen,* this Court held:

"... only that when a parent specifically refuses to consent, the Commonwealth has a heavy burden to meet in establishing that the juvenile's waiver was a knowing and voluntary one." 459 Pa. at 393, 329 A.2d at 288.

We then found that this burden was not met. The Court did not hold that in all cases a juvenile cannot validly waive his constitutional rights without the concurrence of a more mature person.

In *Roane,* the petitioner had been interrogated, without an interested adult present, for one hour and ten minutes after his arrival at the station, despite the fact that Mrs. Roane had made it clear to the police that she wished to be present. Thereafter, Mrs. Roane spotted her son in the hallway and approached him, but the detectives again refused to permit her to see him. Another hour of interrogation followed. Then Mrs. Roane was

permitted to see her son but only in the presence of the detectives. Upon hearing the *Miranda* warnings, Mrs. Roane stated that she wanted an attorney present before a statement was taken. This request was ignored. When the formal questioning began, Mrs. Roane protested but was told, "Let him talk, maybe it will make him feel better." The opinion of the Court pointed out that according to his mother, the juvenile was "incommunicative" throughout this period. It was the detectives' failure to abide by Mrs. Roane's assertion of her son's constitutional rights prior to his formal statement which led this Court into a discussion of the validity of the waiver. The fact that the juvenile had made a prior oral statement implicating himself did not serve to remedy the later refusal to waive by Mrs. Roane, in light of the coercive circumstances under which the previous statement had been elicited. His later formal statement was a mere product of his earlier oral statement. The Court's analysis considered the totality of circumstances relevant to the issue of admissibility of a confession.

*Roane,* and its progeny, are instructive as to the significance of interested-adult consultation when deciding on the admissibility of a juvenile confession. It is an important factor to be considered in determining the validity of a juvenile's waiver as well as the voluntariness of the confession itself. However, I submit, the test remains one based on the totality of circumstances. The consideration of whether a juvenile had an opportunity for friendly adult consultation prior to a waiver is one circumstance which increases in importance as the juvenile's age decreases and the period of police questioning increases.

In light of the above, my understanding of the law on this point follows. Whether a waiver of one's constitutional rights is a knowing and intelligent one is determined by viewing the totality of circumstances. *Commonwealth v. Davis,* 455 Pa. 142, 314 A.2d 313 (1974);

*Commonwealth v. Porter,* 449 Pa. 153, 295 A.2d 311 (1972); *Commonwealth v. Moses,* 446 Pa. 350, 287 that a significant circumstance to be confession is in question, this Court has said that a significant circumstances to be considered is whether the minor had an opportunity to consult with an interested adult prior to his or her waiver. *See Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975) [J–156 of 1974]; *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975) [J–73 of 1974]; *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974).

The circumstances of the present case indicate that the admissibility of appellant's confession turns on the validity of his waiver. There are no indicia of unreliability present in the instant case. Louis Stanton was almost seventeen years old. He was arrested in his mother's presence on the charge of murder and she did not request to accompany her son to the homicide unit. Stanton appeared alert and responsive at all times prior to his waiver and confession. Stanton stated the police did not coerce or intimidate him in any way, factors which were clearly present and relevant in *McCutchen, Starkes,* and *Roane.* He had a tenth grade education. The *Miranda* warnings were read upon arrival at the homicide unit. Stanton stated he understood his rights and that he wanted to speak. Immediately following his answers to preliminary identification questions Stanton confessed to the crime, within fifteen minutes of his arrival at the homicide unit. Although Stanton did not have interested-adult guidance after his arrest and prior to his waiver, it appears from all of the facts that he did in fact validly waive his rights. His confession therefore should be admissible. The case law does not warrant or even support a different result. I therefore dissent.

EAGEN, J., joins in this dissenting opinion.

POMEROY, Justice (dissenting).

Like Mr. Chief Justice Jones, I believe that the voluntariness of a confession given by a juvenile suspected of a crime should be judged by the normal standard of the totality of the circumstances surrounding the waiver of constitutional rights which precedes the confession. Those circumstances will include the age of the suspect and whether opportunity for parental or friendly adult guidance was afforded; the latter factor, while significant, should not by itself be determinative of the voluntariness question. As I read the recent opinions of our Court, however, I cannot escape the conclusion that the majority of the Court has in fact adopted a *per se* rule that a minor cannot validly waive his constitutional rights without having had an opportunity to consult with a parent or other interested adult, who himself has been advised of the minor's constitutional rights. See *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Riggs,* 465 Pa. 208, 348 A.2d 429 (1975) ; *Commonwealth v. Webster,* —— Pa. ——, —— A. 2d —— (1975); *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975) ; *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1975).

I continue of the belief that the rule which has evolved is unnecessary, unwarranted and unwise, and should be changed. For this reason I must again dissent from the application of the *per se* rule in the case at bar. See my dissenting opinion (joined by Mr. Chief Justice Jones and Mr. Justice Eagen) in *Commonwealth v. Chaney, supra,* and the dissenting opinions cited therein.