437 A.2d 387

**COMMONWEALTH of Pennsylvania**

v.

**Arnold T. HENDERSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1981.

Decided Nov. 5, 1981.

Reargument Denied Dec. 4, 1981.

350

John R. Merrick, Public Defender, Charles M. J. Nester, Asst. Public Defender, for appellant.

James R. Freeman, Dist. Atty., Lee Ruslander, Asst. Dist. Atty., for appellee.

Kenneth S. Gallant, Asst. Dist. Atty., for amicus curiae.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On June 5, 1979, our Superior Court entered an order setting aside the conviction of appellant Arnold Henderson, a juvenile, and remanding for a new trial because of the prosecution's use at trial of a statement obtained from appellant in violation of this Commonwealth's "interested adult" rule. 266 Pa.Super. 519, 405 A.2d 940. This Court denied the Commonwealth's petition for allowance of appeal. However, on April 21, 1980, over the dissent of Justices Brennan and Stevens, the Supreme Court of the United States granted the Commonwealth's petition for a writ of certiorari, vacated the Superior Court's determination, and remanded the matter to the Superior Court "for further consideration in light of *Fare v. Michael C.,* 442 U.S. 707 [99 S.Ct. 2560, 61 L.Ed.2d 197] (1979)." 446 U.S. 905, 100 S.Ct. 1829, 64 L.Ed.2d 256. The Superior Court has transferred the matter to this Court. Hence this opinion.

We conclude that, because *Fare v. Michael C.* addresses only the rights of the accused under the federal Constitution, it has no effect upon the Superior Court's application of our interested-adult rule, which is founded upon state law. Thus, the order of the Superior Court granting appellant a new trial is reinstated.

I

Our interested-adult rule is premised on this Court's belief that "the administering of *Miranda* warnings to a juvenile, without providing an opportunity to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile, [is] inadequate to offset the disadvantage occasioned by his youth." *Commonwealth v. Smith,* 472 Pa. 492, 498, 372 A.2d 797, 800 (1977). Thus police seeking to subject a juvenile suspect to custodial interrogation are required first to provide the juvenile with

the opportunity to consult with an adult interested in the juvenile's welfare. This rule

"appreciates that the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision."

*Commonwealth v. Smith*, supra.

Although named after *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669, cert. denied, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975), the interested-adult rule was applied in earlier cases. *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974). On numerous occasions this Court has reaffirmed the validity of the rule by granting relief for its violation.[1] The Superior Court has similarly granted relief,[2] as have the courts of common pleas throughout the Commonwealth.

A number of other jurisdictions also recognize the need to provide special protections to juveniles subjected to custodial

---

1. *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1975); *Commonwealth v. Riggs*, 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Smith*, 465 Pa. 310, 350 A.2d 410 (1976); *Commonwealth v. Stanton*, 466 Pa. 143, 351 A.2d 663 (1976); *Commonwealth v. Lee*, 470 Pa. 401, 368 A.2d 690 (1977); *Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977); *Commonwealth v. Gaskins*, 471 Pa. 238, 369 A.2d 1285 (1977); *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Graver*, 473 Pa. 473, 375 A.2d 339 (1977); *Commonwealth v. Jamison*, 474 Pa. 541, 379 A.2d 87 (1977); *Commonwealth v. Crenshaw*, 475 Pa. 106, 379 A.2d 1305 (1977); *Commonwealth v. Markle*, 475 Pa. 266, 380 A.2d 346 (1977); *Commonwealth v. McCloud*, 477 Pa. 204, 383 A.2d 894 (1978); *Commonwealth v. Walker*, 477 Pa. 370, 383 A.2d 1253 (1978); *Commonwealth v. Lawson*, 478 Pa. 200, 386 A.2d 509 (1978); *Commonwealth v. Barnes*, 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Hackett*, 484 Pa. 43, 398 A.2d 651 (1979); *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979); *Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979).

2. E. g., *Commonwealth v. Christmas*, 281 Pa.Super. 114, 421 A.2d 1174 (1980); *Commonwealth v. Lowery*, 270 Pa.Super. 1, 410 A.2d 867 (1979).

interrogation.[3]  Our rule is also supported by respected scholarship, which recognizes that "[j]uveniles should not be permitted to waive constitutional rights on their own." Institute of Judicial Administration—American Bar Association Juvenile Justice Standards, Police Handling of Juvenile Problems § 3.2 (1980).  See also, e. g., Council of Judges of the National Council on Crime and Delinquency, Model Rules for Juvenile Courts, Rule 25 (1969).

## II

The Commonwealth argues that the Supreme Court's mandate vacating the determination of the Superior Court poses an opportunity to consider the wisdom of our interested-adult rule afresh, and to adopt the test applied by the Supreme Court in *Fare v. Michael C.  Fare* set aside a determination of the Supreme Court of California which had held, as a matter of federal constitutional law, that a statement of a juvenile should have been suppressed on the ground that the juvenile's request to see his probation officer constituted an invocation of his *Miranda* rights.  In setting aside the determination, the Supreme Court enforced no federal rights of the State.  Rather, the Court held only that the state court had erroneously imposed greater restrictions on police conduct than are required by the federal Constitution.

The Supreme Court of the United States has expressly stated:

**3.** Colorado, *People v. Saiz*, Colo., 620 P.2d 15 (1980); *People v. Maes*, 194 Colo. 235, 571 P.2d 305 (1977); Colo.Rev.Stat.Ann. § 19-2-102(3)(c)(I) (1974), Connecticut, Conn.Gen.Stat.Ann. § 46b-137, Indiana, *Garrett v. State*, 265 Ind. 63, 351 N.E.2d 30 (1976); *Bridges v. State*, 260 Ind. 651, 299 N.E.2d 616 (1973); *Lewis v. State*, 259 Ind. 431, 288 N.E.2d 138 (1972), Louisiana, *State v. Dino*, 359 So.2d 586, cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), Missouri, *In re K.W.B.*, 500 S.W.2d 275 (Mo.App.1973), New Mexico, N.M.S. § 321-27, Oklahoma, *J.A.M. v. State*, 598 P.2d 1207 (Okl.Cr.App.1979); *J.T.P. v. State*, 544 P.2d 1270 (Okl.Cr.App.1975), Texas, *In re S.E.B.*, 514 S.W.2d 948 (Tex.Civ.App.1974); and West Virginia, *State ex rel. J.M. v. Taylor*, 276 S.E.2d 199 (1981); W.Va.Code § 49-5-8(d).  Colorado recently has extended its rule, applying it to probation revocation proceedings. *People v. G. L.*, 631 P.2d 1118, (Colo.1981).

"Our only power over state judgments is to correct them to the extent they incorrectly adjudge federal rights. And our power is to correct wrong judgments, not to revise opinions. We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion."

*Herb v. Pitcairn*, 324 U.S. 117, 125–126, 65 S.Ct. 459, 463, 89 L.Ed. 789 (1945).

Thus the determination of the Supreme Court of the United States interpreting the federal Constitution does not and could not disturb the force of our interested-adult rule, a matter of Pennsylvania law. See *Commonwealth v. Ware*, 446 Pa. 52, 284 A.2d 700 (1971), cert. granted sub nom. *Pennsylvania v. Ware*, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453, subsequently vacated and denied, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972) ("it appearing that the judgment below rests upon an adequate state ground"). As this Court recently observed,

"[I]t is well settled that a state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution, and that the rights so guaranteed may be more expansive than their federal counterparts. *Prune-Yard Shopping Center v. Robins*, 447 U.S. 74, 80–82, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); see *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). * * * See generally Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977). This Court has on numerous occasions recognized the Pennsylvania Constitution to be an alternative and independent source of individual rights. See, e. g., *Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155 (1978); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975); *Commonwealth v. Knowles*, 459 Pa. 70, 73 n. 3, 327 A.2d 19, 20 n.3 (1974); *Common-*

*wealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59, cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961)."

*Commonwealth v. Tate,* 495 Pa. 158, 169, 432 A.2d 1382, 1387–88 (1981). Although cases applying the *McCutchen* rule do not expressly articulate the source of the rule, it is clear from numerous decisions which, like *McCutchen,* address issues arising out of the custodial interrogation setting that the *McCutchen* rule is a matter of state law.

The decision of the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), extended the federal fifth amendment privilege against self-incrimination to the setting of custodial interrogation, and applied the extension to the States by way of the fourteenth amendment. As early as 1969, three years after *Miranda,* this Court began to harmonize *Miranda's* interpretation of the federal privilege with this Court's interpretation of the Pennsylvania Constitution's prohibition against the compelling of an accused "to give evidence against himself." Pa.Const. art. I, § 9. In *Commonwealth v. Bruno,* 435 Pa. 200, 255 A.2d 519 (1969), this Court observed:

> "*Miranda v. Arizona,* extended the right against self-incrimination and the right to the assistance of counsel, from the formal 'criminal proceeding,' i. e., the trial, to police interrogation. For similar reasons, we long ago indicated that the right against self-incrimination protects a person from being compelled to answer any question propounded to him by those making a mental examination 'for the purpose of testifying in regard thereto' at a criminal trial. *Commonwealth v. Musto,* 348 Pa. 300, 306, 35 A.2d 307, 311 (1944). Both *Miranda* and *Musto* simply recognize that the guilt determining process does not begin at trial."

*Commonwealth v. Bruno,* 435 Pa. at 207, 255 A.2d at 523.

Two years later, in *Commonwealth v. Ware,* 446 Pa. 52, 284 A.2d 700 (1971), this Court addressed the appropriate

date on which to commence the application of *Miranda*. The Commonwealth contended that the rules of *Miranda* should be applied only to police conduct occurring after the date of the *Miranda* decision. Concluding that under the decision of the Supreme Court of the United States in *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), "the matter is no longer an open question," this Court rejected the Commonwealth's contention and held that "the *Miranda* standards must be applied to all post-*Miranda* trials. ..." 446 Pa. at 55, 284 A.2d at 702. The determination in *Ware* did not rest exclusively upon the decision of the Supreme Court in *Johnson*. Rather, this Court expressly added that "we adopt the *Johnson* position as a matter of state law." 446 Pa. at 56, 284 A.2d at 702. Because this Court could have reached the result in *Ware* by choosing to hold only that the matter was controlled by *Johnson*, *Ware's* reliance upon state law is significant. Indeed, the Supreme Court initially granted the Commonwealth's petition for a writ of certiorari, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453, but then vacated its order, "it appearing that the judgment below rests upon an adequate state ground." 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972).

Subsequent case law demonstrates that *Ware's* deliberate reliance upon state law was a recognition that the principles embodied in *Miranda* are salutary and deserving of application as a matter not only of federal but also of state law. Following *Ware*, in *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975), this Court considered the propriety of a prosecutor's use of an unconstitutionally obtained statement for impeachment purposes. In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court of the United States held that a statement obtained in violation of *Miranda* could be used for impeachment purposes, provided that the statement was trustworthy. This Court rejected *Harris* and concluded that "any statement of a defendant declared inadmissible for any reason by a suppression court cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at

trial." 462 Pa. at 248–49, 341 A.2d at 64. In harmony with the approach taken in *Ware*, this Court added: "[o]ur prohibition against the use of constitutionally infirm statements to impeach the credibility of a criminal defendant testifying in his own behalf is premised upon Pennsylvania Constitution Article I, Section 9 . . . ." 462 Pa. at 249, 341 A.2d at 64.[4]

Since *Ware* and *Triplett*, our cases have confirmed, in unanimous decisions, that this Court's approach to custodial interrogation claims is not controlled exclusively by decisions of the Supreme Court of the United States. In *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977), as in *Ware* and *Triplett*, this Court reaffirmed the independent force of Pennsylvania law in determining the scope of rights to which a suspect subjected to custodial interrogation is entitled:

> "*Miranda v. Arizona*, [supra,] and the decisions of this Court, see e. g., *Commonwealth v. Fisher*, 466 Pa. 216, 352 A.2d 26 (1976); *Commonwealth v. Romberger*, 464 Pa. 488, 347 A.2d 460 (1975), require that, before an individual is subjected to custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel, U.S.Const.Amend. V, VI, XIV; Pa.Const. Art. I, § 9, after adequate warning as to these rights."

**4.** As *Triplett* is reported at 462 Pa. 244, 341 A.2d at 64, it would appear that only six members of the seven-member Court participated in the decision, and that *Triplett's* rejection of *Harris* on state constitutional grounds had the support of three members of the Court—Mr. Justice (now Chief Justice) O'Brien, Mr. Justice Nix, and Justice Manderino. (However, 462 Pa. at 244, 341 A.2d 62, *Triplett* is reported as having been considered by a full seven-member Court, with the rejection of *Harris* as being shared by four members—the above-mentioned three as well as this writer. Court records confirm that this writer did indeed participate in the decision in *Triplett*, and shared the view expressed by Mr. Justice O'Brien.

Any uncertainty concerning the precedential value of *Triplett* is resolved by *Commonwealth v. Hannah*, 462 Pa. 256, 341 A.2d 68 (1975), where, on the basis of *Triplett*, five of this Court's seven members joined in an opinion reversing an order of the Superior Court and granting a new trial.

473 Pa. at 569, 375 A.2d at 1264. Most recently, in *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980), this Court confirmed the independence of this Court's test for "custody." Rejecting the Commonwealth's contention that this Court should follow the then-recent case of the Supreme Court, *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), this Court observed:

> "[T]he Commonwealth's exposition of what it views to be the guiding rule of law seriously understates the circumstances in which *Miranda* warnings must be given in Pennsylvania. The Commonwealth *now*, in supposed harmony with *Beckwith*, would have it that police must give warnings only if they interrogate one in actual custody or otherwise significantly deprived of freedom. But this jurisdiction's test of 'custodial interrogation' examines more than actual deprivation of freedom. * * * As this Court unanimously stated in *Brown*, supra,
>
> \*    \*    \*    \*    \*    \*
>
> 'the test of custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted.' "

488 Pa. at 306–307, 412 A.2d at 521.

Thus, beginning most notably with *Commonwealth v. Ware*, supra, our cases make clear that the core concepts originally articulated in *Miranda v. Arizona* not only have been followed pursuant to our obligation as a part of the federal system, but also have been recognized as separately compelled by the law of Pennsylvania. As a consequence, this Court has independently evaluated the proper approach to be followed to assure that this Commonwealth's privilege against self-incrimination is properly applied to custodial interrogation.

The rule of *McCutchen* is an additional instance in which this Court has sought to give proper meaning and independent force to this Commonwealth's privilege. Thus, whether the issue is the meaning of custody, *Commonwealth v. Meyer*, supra, the permissible use of an illegally-obtained statement, *Commonwealth v. Triplett*, supra, or the means

of best assuring an effective waiver of rights by a juvenile suspect, *Commonwealth v. McCutchen*, supra, this Court is considering this Commonwealth's privilege apart from the privilege contained in the federal Constitution and recognizing the privilege as "an alternative and independent source of individual rights." *Commonwealth v. Tate*, supra.

Accordingly, the order of the Superior Court is reinstated.

LARSEN, J., files a dissenting opinion in which FLAHERTY and KAUFFMAN, JJ., join.

KAUFFMAN, J., files a dissenting opinion in which LARSEN and FLAHERTY, JJ., join.

LARSEN, Justice.

I dissent.

The question presented by this case is simply whether appellant Arnold T. Henderson knowingly, voluntarily and intelligently waived his constitutional rights before giving a statement to the police implicating himself in a homicide. The majority, although obfuscating the question to some degree, eventually concludes that he did not so waive his rights. The basis for this conclusion is the majority's "interested adult" rule which irrebuttably presumes that no one under the magic age of 18 years can make a statement to the police without the assistance of the indispensable "interested adult." *See, e. g., Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975) and *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977). This rule supposedly rests upon a concern for the inexperience of youth. *Id.*

I do not share the majority's appreciation of this rule and believe that justice for all concerned can only be achieved by a flexible rule which considers all of the surrounding circumstances, including the experience possessed by many youthful participants in crime and other factors which indicate that a lack of chronological age has not disadvantaged the defendant or caused his will to be overborne. *See Commonwealth v. Veltre*, 492 Pa. 237, 424 A.2d 486 (1980) (Opinion in Support of Affirmance), and *Commonwealth v. Nelson*, 488

360

Pa. 148, 411 A.2d 740 (1980) (Opinion in Support of Reversal). As was stated in *Fare v. Michael C.*, 442 U.S. 707, 725–26, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212–13 (1970), (the case which the United States Supreme Court directed this Court to consider in deciding the instant issue):

This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. (Citation omitted).

Courts repeatedly must deal with these issues of waiver with regard to a broad variety of constitutional rights. There is no reason to assume that such courts—especially juvenile courts, with their special expertise in this area—will be unable to apply the totality-of-the-circumstance analysis so as to take into account those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved. . . [The totality-of-the-circumstances] approach refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation.

I am in full agreement with these statements and believe that the bright line drawn by the majority is unwise and unjust. *Per se* rules such as the "interested adult" rule discard the interests of justice in an attempt to establish a mechanical and arithmetic system of constitutional criminal procedure and, further, reflect a low opinion of trial courts'

abilities to dispense justice. The "interested adult" rule gives too little, if any, weight to the concerns and interests of society and assumes that the judges who actually hear the evidence—rather than read it on a dry and lifeless record—are not qualified and lack sufficient judgment and wisdom to give proper weight to the degree of a defendant's youth and inexperience. I cannot concur in these bald and unfounded assumptions, and would rely upon the trier of fact's perceptions and conclusions as to all relevant facts and circumstances, subject to accepted standards of appellate review, to determine when a defendant's waiver of rights and confession have been properly obtained and admitted into evidence.

In the instant case, there is ample basis for concluding that the appellant's inculpatory statements were properly introduced. Appellant was not a stranger to the legal system and, at the time of his arrest, was "absent" from a group home in which he had been placed by the juvenile court. He was treated very well while in custody, and he was advised of his constitutional rights twice before any questioning by the police and four times before giving a written statement. Furthermore, before appellant was asked one single question, his parents were called on the telephone and given an opportunity to be present and participate. When they declined, a policeman went in person to their home, where they signed a form indicating that they were fully aware of appellant's constitutional rights and again declined an opportunity to come to the police station.

Under these circumstances, there was absolutely no overreaching of appellant by the arresting officers, and the suppression court's conclusion that appellant knowingly, intelligently and voluntarily waived his constitutional rights is well supported by the record. Accordingly, the judgment of sentence should be affirmed.

FLAHERTY and KAUFFMAN, JJ., join in this dissenting opinion.

KAUFFMAN, Justice, dissenting.

I dissent from the majority opinion which imposes a rigid *per se* rule requiring consultation with an "interested adult" whenever a juvenile is interrogated by the police. The majority would exclude any incriminating statement made by an accused juvenile, *regardless of the circumstances*, where he has not consulted with an interested adult.

The federal Constitution clearly does not require this extreme result. *See Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Without any concern for the particular circumstances of this case, however, the majority concludes that its rule is mandated by the law of this Commonwealth, and reinstates the Superior Court order vacating appellant's convictions of first degree murder, robbery, burglary, theft, criminal conspiracy and unauthorized use of an automobile. (at pgs. 388, 389–390, 392).[1] While I agree that state and federal constitutional protections are not necessarily coextensive, and that states may provide safeguards beyond those prescribed in the federal Constitution, nothing in the law of this Commonwealth dictates the inflexible rule fashioned by the majority.

Although we have long recognized that the waiver of constitutional rights by an accused of tender years must be closely scrutinized, I believe that society would be far better served by a rule inquiring into the validity of each particular waiver *in view of all of the circumstances*. The majority's mechanical rule will result in blanket exclusion of trustworthy evidence vital to the truth determining process, not because the juvenile's will has been overborne or his understanding has been inadequate, but because the police did not follow a rigid procedure in obtaining his statement. A totality of the circumstances rule, on the other hand, not only would adequately protect the rights of the accused by disregarding any waiver of constitutional rights not knowingly, voluntarily, and intelligently made, but would also

1. The trial court held that the written statement of appellant, a 15 year old, was properly admitted after a consideration of the totality of the circumstances.

protect the interests of society by precluding exclusion of relevant, trustworthy evidence simply because of a failure to comply with a rigid *per se* rule.

The flexible totality of the circumstances approach would provide sufficient safeguards in full compliance with the requirements of the federal Constitution. The law of this Commonwealth should not be interpreted to go further and mandate a strict *per se* rule, which in all too many cases would thwart the truth determining process and interfere with legitimate interests of law enforcement.

I would, therefore, affirm the judgment of sentence.

LARSEN and FLAHERTY, JJ., join in this dissenting opinion.