454 A.2d 985

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dale BARRY.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1982.

Decided Dec. 31, 1982.

Reargument Denied Feb. 1, 1983.

110

Lee Ruslander, Chief, Appeals Div., West Chester, for appellant.

Carol E. Haltrecht, West Chester, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Following a trial by jury, appellee Dale Barry was found guilty of murder of the second degree, robbery, theft, and conspiracy in connection with the stabbing death of Oliver Jack Schugardt and the theft of Schugardt's car in Downingtown, Chester County, on February 5, 1977. At trial, over defense objection, the Commonwealth introduced into evidence an inculpatory statement that appellee had given to police following his arrest in Niskayuna, New York on February 8, 1977. On post-trial motions, the Court of Common Pleas of Chester County sitting en banc entered an order granting a new trial on the ground that the statement had been erroneously admitted.[1] Appellant, District Attorney's Office of Chester County, filed this direct appeal. We affirm.[2]

Writing for the court en banc in support of its order granting a new trial, the trial judge determined that the

1. Because of its ruling, the court did not reach the remainder of appellee's claims of error.

2. This appeal was filed prior to the amendment of 42 Pa.C.S. § 722, which transferred jurisdiction of direct appeals in most homicide

admission of the challenged statement at trial had been erroneous on two grounds. First, appellee, who was sixteen years of age at the time of his inculpatory statement, had not been provided an opportunity to consult with an adult interested in his welfare prior to waiving his *Miranda* rights, see *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975); second, the Commonwealth had not introduced evidence from which it could be concluded under the "totality of the circumstances" that appellee had understood and knowingly and voluntarily waived his *Miranda* rights. See *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

Appellant challenges both of these grounds as a basis for a new trial. Because appellee was arrested and questioned by New York police, who were not obliged under New York law to provide appellee with an opportunity to consult with an interested adult, appellant argues that the failure to provide such an opportunity should not bar admission of the statement. Appellant also argues that even if the lack of an opportunity to consult with an interested adult should have resulted in the statement's inadmissibility at trial, this Court should abolish the "interested-adult" rule. We do not address these arguments, because appellant has not established its threshold challenge to the court's determination that the evidence fails to establish a valid waiver of appellee's *Miranda* rights under the "totality of the circumstances."

At the suppression hearing and at trial the Commonwealth presented evidence regarding the circumstances surrounding the custodial interrogation of appellee. Police testimony established that five police officers arrested appellee at 6:00 p.m. at the home of his girlfriend's parents, where appellee had been staying for a few days. Appellee was informed that he was being arrested as a "fugitive from

matters from this Court to the Superior Court. In addition, a separate appeal was filed in the Superior Court seeking review of the order of the court of common pleas as it relates to the charges of robbery, theft and conspiracy. That appeal was transferred to this Court and consolidated with the appeal relating to the charge of homicide.

justice." He was then handcuffed and transported to the police station in a police car driven by Detective Sergeant Nitchman. During the drive, Detective Pasquariello read *Miranda* warnings to appellee from a card,[3] but did not have any discussion with appellee or elicit any response. Upon arrival at the police station, appellee was taken directly to the detectives' office. His interrogation began at 6:20 p.m. and continued for an hour and fifteen minutes, until 7:35 p.m. Prior to questioning appellee, Detective Sergeant Nitchman removed the handcuffs and told appellee "that he could sit down." Appellee was offered coffee, which he refused. Appellee was told that "he had been arrested as a fugitive from justice and that it was in connection with a homicide investigation." The police asked appellee his age and appellee told them he was sixteen. There was no discussion of appellee's *Miranda* rights. However, Detective Pasquariello testified that, before taking appellee's statement,

"We took out—I gave him a blank—a form, which is the rights again, and asked him to, before we take a statement, he would have to read it and sign that waiver of rights.

\*      \*      \*      \*      \*      \*

And when he completed it, I asked him if he read it and he said yes.

Then I said, would you sign, and he did."[4]

In *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Supreme Court of the United States

**3.** The card stated:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law.

You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one."

**4.** The form stated:

"Your Rights. Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

held that, as a matter of federal constitutional law, an accused's waiver of his *Miranda* rights may be deemed valid only if "the totality of the circumstances surrounding the interrogation" demonstrates that "the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *Miranda v. Arizona,* 384 U.S. [436], 475–477, 86 S.Ct. [1602], 1628–1629 [(1966)]." 442 U.S. at 725, 99 S.Ct. at 2572. The Supreme Court stated:

> "The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."

Id.

■ As support for its position that the record establishes a valid waiver of appellee's *Miranda* rights, appellant relies upon the non-coercive aspects of the interrogation, such as the lack of any evidence that promises or threats were made to induce appellee's statement and the fact that appellee's physical condition was not impaired by fatigue, drugs, or alcohol. However, the non-coercive nature of the interrogation does not establish that appellee had "the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." As the court en banc observed in granting a new trial on the basis of the lack of evidence of a knowing and intelligent waiver,

> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
> You can decide at any time to exercise these rights and not answer any questions or make any statements.
> Waiver of Rights. I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement."

"under the totality of the circumstances test, the admission of the statement was error. The trial record is barren as to the education of the accused, the knowledge of the accused as to the substance of the charge, whether the accused had prior contacts with the law (i.e., whether he had received and understood prior *Miranda* warnings) and the maturity of the accused as to his ability to understand and communicate intelligently. *Fare v. Michael C.,* supra; *West v. U.S.,* 399 F.2d 467 (5th Cir.1968); *Com. v. Nelson,* [488 Pa. 148, 411 A.2d 740 (1980)] (Larsen, J., opinion in support of reversal)."

■ Appellant's challenge to the accuracy of the court en banc's review of the record, which alleges that the conclusions of the court en banc are contradicted by the findings of the suppression court, cannot prevail. In concluding that appellee had "knowingly and intelligently and voluntarily waived [his *Miranda*] rights," the suppression court relied solely upon the presence of appellee's signature at the bottom of the "Waiver of Rights" form. As correctly found by the court en banc, this conclusion was erroneous as a matter of law, for appellee's signature does not, by itself, provide a sufficient basis from which to conclude that appellee made a knowing, intelligent and voluntary waiver. See *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Commonwealth v. Bussey,* 486 Pa. 221, 404 A.2d 1309 (1979).

Nor is appellant correct in its allegation that the conclusions of the court en banc are without support on the record. Neither at the suppression hearing nor at trial did the Commonwealth present sufficient evidence of "all the circumstances surrounding the interrogation" to warrant the conclusion that appellee's waiver of his *Miranda* rights was knowing and intelligent.

■ The Commonwealth attempts to cure deficiencies in the trial record noted by the court en banc through evidence presented at bail hearings conducted both before and after appellee's trial. The Commonwealth's reliance on such evi-

dence, however, is misplaced. In order to have appellee's statement properly admitted into evidence, the Commonwealth had the "heavy burden" of demonstrating to the trial court that appellee's waiver of his privilege against self-incrimination and his right to retained or appointed counsel constituted "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Miranda v. Arizona,* supra, 384 U.S. at 475, 86 S.Ct. at 1628; *Fare v. Michael C.,* supra, 442 U.S. at 724, 99 S.Ct. at 2571. See generally *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971). Moreover, even if the evidence presented at the bail hearings had been presented to the trial court, that evidence—the fact that appellee had completed the ninth grade of school and had once been adjudicated a delinquent—would not have been sufficient to establish that appellee's waiver of his *Miranda* rights was knowing and intelligent. Unlike in *Fare v. Michael C.,* supra, where "the police officers conducting the interrogation took care to ensure that [the accused] understood his rights . . . and ascertained that [the accused] understood those rights," 442 U.S. at 726, 99 S.Ct. at 2572, on this record it cannot be concluded that appellee understood the *Miranda* rights as written on the form that he was told to read or that he understood the consequences of signing his name under the "Waiver of Rights" portion of the form. As Detective Pasquariello testified, appellee was simply handed the form and told by the police that "he would have to read it and sign that waiver of rights."

As the record supports the determination of the court en banc that appellee is entitled to a new trial, the order of the Court of Common Pleas of Chester County is affirmed.

Order affirmed.

McDERMOTT, J., files a dissenting opinion in which LARSEN and HUTCHINSON, JJ., join.

HUTCHINSON, J., files a dissenting opinion in which LARSEN and McDERMOTT, JJ., join.

McDERMOTT, Justice, dissenting.

The Court today applies a "totality of the circumstances" test,[1] rather than the *per se* "interested adult" rule[2] to justify the suppression of a juvenile's inculpatory statement. Although I approve of application of the broader standard, I dissent from the majority opinion because I believe appellee's statement should be suppressed under neither test.

Appellee Dale Barry, then sixteen years and nine months of age, was arrested in New York by the Niskayuna Police Department as a fugitive from justice in connection with a Pennsylvania homicide. Appellee, an adult under New York state law, was verbally advised on his *Miranda* rights during his ride to the police station, and was further advised through a written waiver form at the station. Appellee, indicating that he had read each line of the waiver form, signed the form and gave a statement. The suppression hearing judge concluded that appellee's waiver was knowing, intelligent and voluntary, and the statement was admitted at trial. Appellee was convicted after a jury trial of second degree murder, robbery, theft and conspiracy.

On post-trial motions, the court *en banc* concluded that appellee's statement should have been excluded, and awarded appellee a new trial. The basis for this conclusion was the court's determination, after an exhaustive analysis, that the "interested adult" rule, was applicable even to statements obtained in other jurisdictions, and must be given *per se* effect. The court's further assertion that the statement was inadmissible under the totality of the circumstances was something of an afterthought. To characterize that assertion as an alternative ground for decision, and thus deflect the challenge to the continuing validity of our "interested adult" rule, misrepresents the proceedings below.

1. *See Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

2. *See Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975). *See also, Commonwealth v. Henderson,* 496 Pa. 349, 437 A.2d 387 (1981).

I would hold, as did the court of common pleas *en banc,* that if the "interested adult" rule applies to exclude the statements of any juvenile tried in Pennsylvania, it must apply to statements made outside the Commonwealth. I would, however, go on to overrule our decision in *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975), and its progeny, and follow the "totality of the circumstances" standard announced by the Supreme Court of the United States in *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

The *McCutchen* rule is not required by the federal Constitution, but is simply another example of the truth-deterring road blocks placed by the Court between the fact-finder and the facts. As Mr. Justice Kauffman stated in *Commonwealth v. Henderson,* 496 Pa. 349, 437 A.2d 387 (1981):

> Although we have long recognized that the waiver of constitutional rights by an accused of tender years must be closely scrutinized, I believe that society would be far better served by a rule inquiring into the validity of each particular waiver *in view of all of the circumstances.* The majority's mechanical rule will result in blanket exclusion of trustworthy evidence vital to the truth determining process, not because the juvenile's will has been overborne or his understanding has been inadequate, but because the police did not follow a rigid procedure in obtaining his statement. A totality of the circumstances rule, on the other hand, not only would adequately protect the rights of the accused by disregarding any waiver of constitutional rights not knowingly, voluntarily, and intelligently made, but would also protect the interests of society by precluding exclusion of relevant, trustworthy evidence simply because of a failure to comply with a rigid *per se* rule.

496 Pa. at 362–63, 437 A.2d at 394 (Kauffman, J., dissenting) (emphasis in original).

The facts of this case demonstrate the deficiencies of this Court's current inflexible approach. In neither age, maturity, nor experience does appellee warrant the special protections necessary for some juveniles. Operation of the *per se*

rule in such cases undermines the truth-determining process without concomitant benefit. Moreover, nothing in the law of this Commonwealth mandates the inflexible *McCutchen* rule. We should join the thirty-six states and the United States Supreme Court which reject this rigid approach, and evaluate the validity of such waivers in view of all the circumstances.

Furthermore, even applying the totality of the circumstances test to the instant case, I would uphold the decision of the suppression court admitting appellee's statement.

The suppression judge concluded that appellee's waiver of his *Miranda* rights was knowing and intelligent and voluntary. The record shows that appellant was twice informed of his rights; read and signed a written waiver; acknowledged that he had read each line of the waiver form; and read, corrected, and initialed each page of his statement. The conclusion of the suppression judge had ample support in the record. Under the totality of the circumstances approach, the court *en banc* had no valid basis for disturbing the judgment of the suppression court. Appellee's statement was properly admitted for consideration by the jury in its search for the truth.

*Per se,* prophylactic rules, in almost every instance foreclose the truth of a case. They are the classics of "technicality," a galvanic, judicial punch board; wonderful for arithmetic, "mechanical" jurisprudence. If people were digits and cases geometric, if the totality of the circumstances were all squares and circles, such rules might have provided a shorthand. They have proved a failure of justice, however, in more instances than they ever were designed to serve.

LARSEN and HUTCHINSON, JJ., join in this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I join the dissenting opinion of Mr. Justice McDermott. I also wish to add that, unlike silence in the face of *Miranda* warnings, an express written waiver is sufficient to meet

the Commonwealth's burden of proving a waiver of *Miranda* rights. Contrary to the majority position, *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) supports this view. In that case, the United States Supreme Court neither held nor said that a signature on a waiver form could never by itself satisfy the *Miranda* requirement that the defendant make a knowing, intelligent and voluntary waiver of his right to remain silent. In fact, in *Butler* the United States Supreme Court said

> [a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.

*Id.* at 373, 99 S.Ct. at 1757. This statement, to my mind, leaves the decision as to whether a written waiver is valid within the sound discretion of the trial court. Since the suppression court had sufficient basis for finding a valid waiver, I believe the trial court *en banc* and the Superior Court erred in reversing the suppression court. I would, therefore, reverse.

LARSEN and McDERMOTT, JJ., join in this dissenting opinion.